[No. 38914.    Department One.    March 23, 1967.]

ARTHUR H. OLIVER et al., Petitioners, v. AMERICAN MOTORS CORPORATION et al., Respondents.*

*Reported in 425 P.2d 647.

*Cushman, Russell & Holt,* by R. M. Holt, for petitioners.

*Edward C. Burch* (of *Martin, Shorts & Bever*), for respondents Poe.

SOULE, J.†—On the 19th day of July, 1965, the plaintiffs, Arthur Oliver and his wife, Maude Oliver, purchased a new Rambler automobile from W. D. Poe and Jane Doe Poe, doing business as Poe Motor Company. The car had been manufactured by the defendant American Motors company. The defendants Poe are residents of Baker, Oregon, and do business in that community. The purchasers are likewise residents of Oregon and all aspects of the sale were conducted and completed in Oregon. Apart from the incident hereinafter set forth, the plaintiffs do not contend that the defendants Poe had any contacts whatsoever with the state of Washington.

After the purchase, and in the month of August 1965, Mr. and Mrs. Oliver, together with the other plaintiffs, Patricia

---

†Judge Soule is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Oliver, Robert T. Mitchell and Jeannie T. Saupan, entered the state of Washington on a personal automobile trip.

In paragraph five of their complaint they allege that while driving in this state Maude Oliver, Patricia Oliver, Robert T. Mitchell and Jeannie T. Saupan were overcome by carbon monoxide gas entering the automobile by reason of a defective exhaust system and a defectively sealed trunk. The date of this occurrence appears from the complaint to have been on or before the 22nd of August 1965.

The negligence of the defendants Poe is alleged to be that they "did not discover upon their inspection of said vehicle that the vehicle had a defective exhaust system and that the trunk compartment of said vehicle was not properly sealed, . . . ."

Service of process was made upon the defendants Poe in Baker, Oregon, the validity of which service is not now challenged.

The defendants Poe thereafter moved to quash service and to dismiss the action as to them because of lack of jurisdiction. In support of the motion, the affidavit of W. C. Poe was filed which set forth the fact that the sale was made in Baker, Oregon, to Arthur Oliver and that the defendant Poe was not a resident of the state of Washington in July of 1965. The affidavit further states:

[N]or has affiant, or anyone acting for or on behalf of Poe Motor Company, done or transacted any business in the State of Washington, sent any vehicles into the State of Washington, sent any agents or salesmen into the State of Washington, solicited in the State of Washington, kept or maintained any office, personnel, advertising, telephone list, goods or property in the State of Washington.

The affidavit has not been controverted.

On these facts the motion to quash was granted as to the defendants Poe leaving the case between the plaintiffs and the American Motors company pending and a writ of certiorari has issued to review the order quashing summons and dismissing as to the Poes.

At the outset we are confronted with the question of whether or not the order of dismissal is properly review-

able upon certiorari. We have previously permitted it for the purpose of reviewing an order denying a motion to quash service of summons. *McKinney v. Northwest Tractor & Equip. Corp.,* 41 Wn.2d 372, 249 P.2d 401 (1952).

■ The plaintiffs, petitioners here, contend that the remedy of appeal is not adequate because a question of jurisdiction is involved and that coupled with it are the complications of a multiparty action, the balance of which is still pending at the superior court level. Plaintiffs argue that to quash the writ will place them in the untenable position of having to proceed against American Motors alone and then, if successful on their appeal from the dismissal of Poe, be put to the burden of another separate trial on the merits against Poe.

Although a reviewing court must retain a measure of latitude in deciding whether to grant certiorari in a particular case, we agree that in the present situation the right of appeal appears to be an inadequate remedy.

■ Cases which relate to the right of review by certiorari from rulings on matters of venue seem to express the appropriate reason for granting certiorari where, quite apart from the merits, the question of the proper locale of the forum is before the court. In *State ex rel. Gamble v. Superior Court,* 190 Wash. 127, 66 P.2d 1135 (1937), we held that where a party has a right independent of the merits of the issues pending to a trial in a particular place, an extraordinary legal remedy such as certiorari is the proper method to test that right in this court. In so holding we quoted with approval from *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630 (1917).

In making its determination in the *Martin* case, the court addressed itself to the problem not only of whether an appeal would lie, but whether or not the appeal would be adequate in fact to protect the litigant. On page 361, in discussing this question, it said:

> It would seem, if the statute grants a right that does not depend upon the merit of the case, but is independent of the merit of the case, that a litigant should not be put to the hazard, delay, and expense of a trial upon the

merits as a prerequisite to the assertion of the right. In such cases, the court is called upon to deal with something more than "simply a law of procedure and practice," as was held by Judge Dunbar, and properly so, considering the record in the case of *State ex rel. Townsend Gas & El. L. Co. v. Superior Court,* 20 Wash. 502, 55 Pac. 933. It is a right made equivalent to the right to fix the venue of a local action under the statute, and when asserted should not be thrust aside as an incident or an error to be heard upon an appeal from a judgment on the merits. The terms "speedy and adequate," when applied to remedies, mean, or ought to mean, a remedy adequate and timely to review the particular error relied on, and not merely a remedy which depends upon a proper determination of the issues as defined by the pleadings, and such questions of practice and procedure as may arise in bringing the case to issue, and trying out the facts.

Wherefore it may be said, where there is a right to a trial in a particular place, which right is independent of the issue as tendered by the complaint, an adequate remedy means a trial in the first instance by a court having jurisdiction to hear and determine the merits.

The reasons so expressed, though set forth in a case involving venue and the defendant's rather than the plaintiff's rights, seem equally apposite in a case involving a problem of jurisdiction where a delay in making the determination may result in two trials where one otherwise would suffice, or may, as a practical matter, force a plaintiff to forego a right to trial against certain defendants, which right is, in fact, due him under the law.

Under the circumstances prevailing in the present case, we will not quash the writ but will proceed to a determination on the merits.

This case is one in which the plaintiff seeks to affix jurisdiction through the so-called "long arm" statute. RCW 4.28.185, the pertinent part of which provides as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby *submits* said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

(c) The ownership, use, or possession of any property whether real or personal situated in this state;

(d) Contracting to insure any person, property or risk located within this state at the time of contracting. (Italics ours.)

The question now directly posed is whether or not a nonresident who has no contacts with this state apart from the occurrence in issue and who, in fact, has done no act in this state, but whose act in another state has had an injurious consequence in this state, can constitutionally be said to have "submitted" to the jurisdiction of this state so that personal jurisdiction can be obtained by out-of-state service.

Three times since 1963 this court has construed and applied RCW 4.28.185.

In *Tyee Constr. Co. v. Dulien Steel Prods. Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963), a business controversy arose between Tyee and Dulien as a result of which Dulien, feeling that the responsibility was, at least in part, that of a New Jersey corporation, Belyea Co., Inc., obtained an exparte order adding Belyea as an additional defendant and authorizing service of Dulien's cross claim against Belyea. Personal service was had in New Jersey. Belyea appeared and filed a motion to quash, which motion was granted and Dulien appealed. In upholding the order quashing service, this court noted the change in the state of the law regarding extraterritorial jurisdiction of the person as that law has developed from *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565 (1877), through *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 Sup. Ct. 154, 161 A.L.R. 1057 (1945), and then through *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 Sup. Ct. 1228 (1958).

That the efforts of a state to acquire jurisdiction through a long arm statute such as ours presents constitutional problems and that these problems relate to the concept of jurisdiction over the *person* is made clear in *International Shoe Co. v. Washington, supra,* p. 316:

Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U.S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, *he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."* (Italics ours.)

The court went on to say at 319:

Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has *no contacts, ties, or relations.* (Italics ours.)

In the *Tyee* case we noted the cautionary admonition found in *Hanson v. Denckla, supra,* in which the United States Supreme Court said, p. 251:

[I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.

The *Hanson* case also said, p. 253:

[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

882

After considering the reasoning of relevant cases we suggested certain criteria for determining whether jurisdiction could or should be assumed under RCW 4.28.185 (1) (a):

> Against the backdrop of these decisisons, and within the framework of our statute, it would appear reasonable, however, to conclude that there are three basic factors which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. (Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods. Inc.,* 62 Wn.2d 106, 115, 381 P.2d 245 (1963).

We concluded that under the circumstances the assumtion of personal jurisdiction over Belyea would offend "traditional notions of fair play and substantial justice" within the contemplation of the due process clause.

The *Tyee* case was followed almost at once by *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963). That case involved a tort claim for injuries suffered in Washington but resulting from the manufacture in Oregon of a defective amusement device created specifically for use at the Seattle World's Fair. In addition, the defendants retained a security interest in the device and through its agents came to Washington frequently to service it. We held that the defendants' activities in Washington were sufficient to warrant assuming jurisdiction under our "long arm" statute. In so doing we applied the principle set forth in Restatement, Conflict of Laws § 377, "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."

In the *Nixon* case we also noted that the balance of convenience to the parties was a factor to be considered

and this included the fact that some defendants were not amenable to process in Oregon. We concluded as follows, p. 999:

> We have taken into consideration the circumstances herein presented: the activities of the respondent in connection with the operation of the machine in Washington, its retention of title (even if only temporary), the commission of the tortious act which resulted in the injuries sustained by the plaintiffs and conclude that the convenience of all parties concerned would best be served by trial in the courts of this state. We construe RCW 4.28.185 as providing for jurisdiction in this state and that assumption of in personam jurisdiction over the respondent in this action would not "offend traditional notions of fair play and substantial justice," within the contemplation of the due process clause, . . . .

The decision in the *Nixon* case thus came within the standards and limits fixed by the *Tyee* decision.

Our latest examination of the long arm statute is found in *Golden Gate Hop Ranch, Inc., v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965).

The alleged negligence was the writing of a letter by the defendant, then in Chicago, to the plaintiff's parent corporation whose office was in New York. In this letter the use of the chemical "heptachlor" was recommended upon the hops of the plaintiff corporation. The recommendations were communicated from New York to the plaintiff corporation through internal corporate channels. The defendant's recommendations were followed and damage resulted.

The offending product was not sold directly to the plaintiff, but rather was sold by defendant to an intermediate manufacturer who incorporated the product in a preparation designed for widespread commercial distribution and which the plaintiff ultimately used. In holding that the requirements of RCW 4.28.185 were met, we said, p. 471:

> However, in the recent case of *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305, we held that, where damages result from negligence of a defendant, the injury occurring in this state is an inseparable part of the "tortious act," as that term is used in the statute. Consequently,

the respondent brought itself within one of the subdivisions of the act and was entitled to take advantage of its provisions.

*There was also evidence that, while heptachlor in its raw form is not sold in this state, but is sold to manufacturers in other states who combine it with other ingredients to form usable pesticides, which are then sold through distributors in this state, the appellant manufacturer does engage in nationwide advertising and has sent a representative to this state to do "missionary" work for the product.*

*The company also subsidizes a research laboratory at Washington State College, at Pullman, which conducts tests in the use of the chemical.* (Italics ours.)

We did not comment upon the need for other "minimal contacts" but from the italicized language it is abundantly clear that they existed in sufficient quantity to meet the constitutional limitations suggested by *Hanson v. Denckla, supra.*

Plaintiff appears to overlook any requirement of "minimal contact" and asserts that because there was a "tortious act" and that Washington is the "place of wrong" that personal jurisdiction can attach without other considerations.

Confusion of thought can be generated if fundamental terms and concepts are applied without due regard for the areas of law to which they relate. Therefore, a review of certain definitions with comments on their frames of reference may be helpful.

■ "Tortious conduct" is defined in Restatement (Second), Torts § 6, and "place of wrong" is defined in Restatement, Conflict of Laws § 377. These definitions are given strictly within the framework of the subjects to which they relate. To apply them uncritically to problems which relate to in personam jurisdiction is to apply them out of context.

Tortious conduct has been defined in Restatement (Second), Torts § 6:

The word "tortious" is used throughout the Restatement of this Subject to denote the fact that conduct whether of act or omission is of such a character as to

subject the actor to liability under the principles of the law of Torts.

With it must be read § 5 which defines the term "subject to liability":

The words "subject to liability" are used throughout the Restatement of this Subject to denote the fact that the actor's conduct is such as to make him liable for another's injury, if

(a) the actor's conduct is a legal cause thereof, and

(b) the actor has no defense applicable to the particular claim.

A portion of the comment appended to the Restatement (Second), Torts § 5 makes clear the distinction between one who is "subject to liability" under principles of tort law as defined in the Restatement and one who, though "subject to liability," may nonetheless escape the consequences of his tort for reasons not connected with tort law, Restatement (Second), Torts § 5, p 10:

There may be other reasons not based upon any principle of tort law which prevent the actor who is subject to liability from becoming liable. Thus, a statute of limitations may prevent the bringing of an action against a defendant whose conduct had undoubtedly satisfied all the conditions for liability, and against whom a timely action could have been maintained. Again, a plaintiff may lose his right to enforce an admitted liability by his failure to comply with a statutory requirement that notice of the accident be given within a prescribed time. These procedural limitations are in the main of statutory origin and vary greatly in the several States. They are not imposed by any general principle of the law of torts and are, therefore, not within the scope of the Restatement of this Subject. So too, the status of the plaintiff or defendant may be such as to prevent the plaintiff from bringing an action or to give the defendant immunity, as where the plaintiff is a nonresident enemy alien during a time of war, or the defendant is a sovereign of a foreign state or, as his diplomatic representative, partakes of his immunity. These restrictions are not peculiar to tort liability, but are common to every kind of liability. They are not imposed by any principle of the law of torts. There-

fore, it is not within the scope of the Restatement of this Subject to state their existence or effect.

One of the other factors which must be considered is the constitutional limitation of due process. Thus one may be "subject to liability" but liability may not be imposed because personal jurisdiction cannot be constitutionally obtained.

To contend, as the appellant must, that because there was a tortious consequence in this state that there was a tortious act and that because there was a tortious act the defendant Poe is "subject to liability" is sound as far as it goes, but to then contend that because the Poes are "subject to liability" in the strict tort context of the definition that without more they can be served under our long arm statute is to resort to bootstrap logic and to ignore constitutional limitations. Though the Poes may be "subject to liability," nevertheless, personal jurisdiction must be constitutionally obtained. Consideration must be given to "minimum contacts" and other factors which bear upon "traditional notions of fair play and substantial justice."

Nor is the problem solved by reference to the previously noted portion of the Restatement, Conflict of Laws § 377. A more complete quotation of the section with its comments follows:

> The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place.

*Comment*:

> *a.* Each state has legislative jurisdiction to determine the legal effect of acts done or events caused within its territory (see § 64). If consequences of an act done in one state occur in another state, each state in which any event in the series of act and consequences occurs may exercise legislative jurisdiction to create rights or other interests as a result thereof (see § 65). Thus, both the state in which the actor acts and the state in which legal consequences of his act occur have legislative jurisdiction to impose an obligation to pay for harm caused thereby. If any state having legislative jurisdiction so to do imposes a right-duty relation delictual in character, other

states will recognize the existence of such relation under the rules stated in §§ 377 to 390. What acts and events are necessary to constitute a tort is a question of the law of Torts and that law varies in different states. Although by statute, the state in which any event in the train of consequences, starting with the act of the wrongdoer and continuing until the final legal consequences thereof, may make the event a wrong, the situation is, in most cases, governed by the common law. The common law selects some particular point in the train of events as the place of wrong. In the following Note are stated rules which represent the general common law as to what constitutes the place of wrong in different types of torts. These rules can be, but ordinarily are not, changed by statute.

Then follows a note devoted to examples of situations determining where a tort is committed.

The entire thrust of § 377 is directed to determining where a tort is committed coupled with comments upon the power of the various states to impose obligations to pay for harm in the right-duty relation of a delictual nature. The power of the state of Washington to determine the right-duty relation between the parties is not the subject of this controversy. That power is classically referred to as jurisdiction over the subject matter and it is this type of jurisdiction which is obviously being discussed in § 377.

The present problem is whether the jurisdiction over the person can constitutionally be acquired where, although the state of Washington is the place of tort, the out-of-state actor has no other contacts with this state and particularly has done nothing "purposeful" looking toward the projection of the consequences of his act into the territory of the state of Washington. The term "purposeful" we use, of course, in the sense that the actor intended or at least could be charged with knowledge that his conduct might have consequences in another state.

We have previously given approval to the reasoning of *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). In the course of deciding *Nixon v. Cohn, supra,* we quoted extensively from that decision and the cases cited therein. The Illinois statute is

very like our own in that submission to jurisdiction is presumed from the doing of certain acts.

The fact pattern in *Gray* is remarkably like that of *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra,* but in deciding the *Gray* case, though the opinion did not discuss the significance of the context in which the Restatement, Conflict of Laws § 377 defined the "place of wrong," the court did not overlook the necessity for "minimum contact." The court said, p. 440:

> Whether the type of activity conducted within the State is adequate to satisfy the requirement depends upon the facts in the particular case. (*Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445, 96 L.ed 485, 492.) The question cannot be answered by applying a mechanical formula or rule of thumb but by ascertaining what is fair and reasonable in the circumstances. In the application of this flexible test the relevant inquiry is whether defendant engaged in some act or conduct *by which he may be said to have invoked the benefits and protections of the law of the forum.* (See *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L.ed 2d 1283, 1298; *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 90 L.ed 95, 104.) (Italics ours.)

In deciding the *Gray* case that court did recognize that there had to be some course of conduct upon which to rationally base the inference of submission to jurisdiction. It examined the particulars of a number of cases, all of which demonstrated submission to jurisdiction either by an act within the state, an act outside the state purposefully directed to the state, or a *general course of conduct* outside the state but inevitably affecting persons in the state and from which it seemed fair to imply submission.

As the opinion points out, the case there under consideration was not that of a single isolated instance. On p. 441 the court said:

> In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of Titan's business or the territory in which appliances incorporating its valves are marketed, *it is a reasonable inference that its commercial transactions, like those of*

*other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occuring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products (presumably sold in contemplation of use here) it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.* (Italics ours.)

■ The distinction is obvious. Though it may be just to infer minimal contacts as to a manufacturer who produces goods and puts them into the broad stream of interstate commerce as was done in *Gray v. American Radiator & Standard Sanitary Corp., supra,* and as was done, in fact, in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra;* we believe that no such inference is warranted where there is a sale by an out-of-state retailer to his local customer, if nothing further appears by way of a purposeful act on his part or possession of information, which would in any way charge the retailer with knowledge that his transaction might have out-of-state consequences. To attach personal jurisdiction because thereafter the out-of-state purchaser brings the offending mechanism into this state and a tortious consequence occurs is so slender and tenuous a thread upon which to hang the implication of submission to our jurisdiction, that in our judgment it does indeed offend "traditional notions of fair play and substantial justice" within the contemplation of the due process clause.

■ Before there can be any basis for implying a consent or assuming submission to the jurisdiction, something must appear beyond the mere consequence of an act done in an entirely local framework in another state. Nor do we believe it sufficient to imply from a local retail sale that which legitimately can be implied when a manufacturer is

involved,[1] namely, that the actor is presumed to know that his product will go beyond the borders of his state. The manufacturer knows, or at least hopes, that his products will go beyond the boundaries of his state in the normal course of business. The retailer knows, quite to the contrary, that in the normal course of business the object sold will stay and be used reasonably near the place of sale. The fact that an automobile or any other item of personal property is capable of being transported beyond the boundaries of the state should not be sufficient to place the retailer under the same burdens as the manufacturer.

We hold that where a merchant in another state makes a sale and delivery of personalty in the regular course of his business in that other state and does nothing further than complete the sale there, he has not "submitted" to the jurisdiction of the Washington courts even though the article sold may thereafter be instrumental in causing harm in Washington when brought here by the customer.

The order of dismissal is affirmed.

OTT, HUNTER, and HALE, JJ., concur.

ROSELLINI, J. (dissenting)—Without acknowledging that they have done so, the majority has retreated from the position which this court took in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 403 P.2d 351 (*cert. denied* 382 U.S. 1025). We held in that case that a tortious act is committed in this state, within the meaning of RCW 4.28.185, so as to submit the tort-feasor to the jurisdiction of the state courts, if damage is suffered within this state as a result of the tort-feasor's negligence, even though the alleged negligent act of the defendant may have occurred outside the state. We did not hold that it was necessary that the tort-feasor should have known that the product would be used.

This court did not suggest in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra*, that the occurrence of

---

[1]See 73 Harv. L. Rev. 929 for comment on the reasonableness of the distinction based on the difference in the type of business operation.

minimal contacts with this state, on the part of the defendant, was necessary in order to imply a submission to jurisdiction. In my opinion, the "minimal contacts" doctrine is an artificial standard by which to establish the propriety of subjecting a resident of another state to the jurisdiction of the courts of this state. I do not believe that the manufacturer of an article which may receive, and is intended to receive, nationwide distribution, gives any more thought to the question whether engaging in such a business subjects him to the jurisdiction of the courts of other states than does the seller of an automobile or other single items of merchandise. Incidentally, it seems to me that the seller of an automobile should know that it is more than likely to be driven in other states.

I think the courts can take judicial notice of the fact that ours is an increasingly mobile society. The transaction of interstate business is an ordinary happening, not restricted to the manufacturers of nationally-advertised products. It is obviously not at all uncommon for a negligent act to be committed in one state and the damage to occur in another; and therefore, it is not at all unforeseeable that the damage resulting from negligence can occur outside the neighborhood, city, county or state.

The "constitutional limitations" as set forth in the majority opinion are exceedingly vague to my way of thinking. The precise constitutional provision relied upon is not set forth in the opinion. There is talk about "traditional notions of fair play and substantial justice." It appears that the trend of the United States Supreme Court has been in the direction of finding those notions less and less restrictive on the jurisdiction of state courts which offer redress to wronged persons. "Traditional notions of fair play and substantial justice" take into account hardships on plaintiffs as well as on defendants, and in my opinion, the appropriateness and convenience of the forum should be determined on grounds other than a fictional implied consent on the part of the defendant to be sued there. The proper place for the trial should be a question of venue and not of jurisdiction.

In my opinion, the retreat from the straightforward position taken by this court in the *Golden Gate Hop Ranch* case, *supra*, is unjustified on theory or on the facts of the case. According to the distinction made by the majority, if the purchaser of the automobile had advised the Oregon dealer that he contemplated taking a trip to Washington, the dealer would have impliedly consented to be sued in the courts of this state for his negligence in inspecting and servicing the car. His only alternative would have been to refuse to sell it, a highly unlikely possibility. As it was, the dealer escapes the jurisdiction of the Washington courts because of the fortuity that the purchaser was not as talkative as another customer might have been. If I am incorrect in my reading of the majority opinion, and actual knowledge of the defendant (rather than reasonable foreseeability) is not the criteria, then I can only filch from that opinion a holding that large foreign manufacturers are subject to the jurisdiction of courts in this state when their negligence causes harm, but that small foreign dealers are not. It was heretofore unknown to me that "traditional notions of fair play and substantial justice" required that large defendants be governed by a different rule of law than that applicable to small defendants.

As far as convenience of the forum is concerned, the defendants in this action would not have to travel as far as did the agents of the Velsicol corporation, and it appears that, as in that case, most of the witnesses are in this state. I assume that is the reason the plaintiffs chose to bring the action here. But if this is not the most convenient forum, objections to it on that basis should be taken in the form of a motion for change of venue, not in an attack on the jurisdiction of the court.

I do not think that the defendants have sustained the burden of demonstrating that the statute is unconstitutional. I would adhere to the interpretation of the statute which we adopted in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra*, and reverse the order of dismissal.