**Rosalyn MIROTZNICK, et al.,**
**Plaintiffs,**

v.

**SENSNEY, DAVIS & McCORMICK, a partnership, et al., Defendants.**

**AETNA CASUALTY & SURETY CO., Plaintiff,**

v.

**SENSNEY, DAVIS & McCORMICK, a partnership, et al., Defendants.**

**Nos. C85-1076, C85-0108.**

United States District Court,
W.D. Washington.

Aug. 14, 1986.

---

## AMENDED ORDER *

WILLIAM D. BROWNING, District Judge.

These cases, consolidated for pretrial purposes, are two recent additions to the massive litigation arising out of the Washington Public Power Supply System municipal bond default. These particular lawsuits involve claims brought against the local attorneys and their respective law firms that signed opinion letters in 1976 regarding their clients' participation in Projects 4/5.[1] Claims are asserted on behalf of Projects 4/5 bond purchasers pursuant to federal and Washington State securities laws, and several common law theories.[2]

■ Defendants have moved to dismiss the allegations of both complaints on a number of grounds including Rule 12(b)(6) failure to state a claim, and Rule 9(b) failure to plead fraud with particularity. In addition, certain of the non-Washington defendants have raised the defense of lack of jurisdiction. The jurisdictional defense was first raised in response to the original Aetna complaint which did not include a claim under federal securities law. Aetna was subsequently given leave to amend to add a claim under § 10(b) of the Exchange Act. Since both complaints now before the Court are brought under the federal securities laws, jurisdiction is determined according

---

* This Order, originally entered June 23, 1986, was withdrawn as it applied to the *Aetna* case on July 22, 1986 pursuant to the granting of Aetna's Rule 60(b) motion. The basis for the Rule 60(b) motion was that in the original Order the Court had not addressed Aetna's assertion of diversity jurisdiction when it declined to exercise pendent jurisdiction and dismissed the state law claims in Aetna's Complaint. In order to avoid confusion with respect to the substantive rulings entered in these consolidated cases, this Amended Order is identical to the original Order with the exception of this note and the new language regarding Aetna's state law claims beginning at page 941.

1. The *Aetna Casualty & Surety Co.* complaint names only those attorneys, and their firms, whose clients were later found to have not had authority to enter into the Participants' Agreements. The *Mirotznick* complaint additionally names the attorneys for the rest of the 88 Participants, in particular those representing electric cooperatives and Oregon Participants, that have not been found to have lacked authority to enter into the Participants' Agreements.

2. Both complaints assert claims pursuant to § 10(b) of the 1934 Exchange Act, the Washington State Securities Act, common law fraud and deceit, and common law negligent misrepresentation. In addition, the *Mirotznick* complaint asserts a claim for professional negligence or "malpractice."

to the sufficiency of contacts with the United States rather than with the forum district. *See Securities Investment Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir.1985). There is no serious contention that the *Vigman* test for personal jurisdiction is not met here.[3]

## STATEMENT OF FACTS

On April 15, 1976, a year prior to the first issuance of municipal bonds for Projects 4/5, each participating utility was requested to deliver to the Supply System an opinion letter executed by that Participant's counsel. Each of the 88 Participants delivered such a letter to the Supply System. The first bonds for Projects 4/5 were offered for sale on February 23, 1977 and continued through fourteen bond offerings totalling approximately $2.25 billion in principal amount. Termination of construction on Projects 4 and 5 was announced by the Supply System on January 22, 1982. Thereafter, some of the municipal Participants sought a judicial declaration that they lacked the authority to have entered into the Participants' Agreements.

Against this background, plaintiffs allege that local counsel for the Participants, defendants here, engaged in securities fraud, or aided and abetted others engaged in securities fraud, by signing the opinion letters.

## APPLICABLE LEGAL STANDARDS

Defendants argue that the allegations in the complaints are insufficient as a matter of law. In order to grant the defendants' motions to dismiss, this Court must be able to say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). For purposes of applying this test, the Court must view the material allegations of the complaints in the light most favorable to plaintiffs, assuming all factual allegations to be true and resolving all doubts to the benefit of plaintiffs. These stringent standards reflect the belief that in most cases the disposition of claims should be on the merits after the plaintiff has had an opportunity to develop and present the evidence. *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (9th Cir.1957).

However, despite the reticence of courts to grant a judgment on the pleadings, "On occasion motions to dismiss supply a useful technique for the prompt disposition of suits," *Gruen Watch Co. v. Artists Alliance*, 191 F.2d 700, 705 (9th Cir.1951). In those instances where a Court is convinced that even under the most generous construction, the allegations in the complaint are not adequate to support the claim being asserted, a judgment on the pleadings is a way to avoid wasteful litigation.

## DISCUSSION

The allegations against defendants in the cases at bar center on the opinion letter signed by each defendant in 1976 while serving as local counsel for entities that became Participants in Projects 4/5.[4] Each such opinion letter was patterned after a sample opinion letter provided to the client (Participant) by the Supply System together with a copy of the Participants' Agreement to be signed by the client, and a draft Bond Resolution which was incorporated by reference in the Participants' Agreement. (¶ 162, ¶ 114)[5] The opinion letters,

---

**3.** In fact, these out-of-state defendants' later briefing on the issue of personal jurisdiction acknowledges the contrary Ninth Circuit authority, waives oral argument on the issue and seeks merely to preserve the argument for purposes of appeal.

**4.** In addition to the individual attorneys who signed the opinion letters, the partnerships and professional service corporations with whom they were affiliated are also defendants in these actions. Certain of these other defendants have

raised questions about whether the claims against them involve vicarious liability, an improper form of liability under the securities laws. The disposition of these motions to dismiss makes it unnecessary to reach that argument.

**5.** All cites to the complaints will first reference the relevant paragraph in the *Mirotznick* complaint followed, where applicable, by the relevant paragraph in the *Aetna* complaint.

signed by the defendants and addressed to their respective clients (the Participants), provided in pertinent part:

As your attorney, I have examined the Washington Public Power Supply System Nuclear Projects Nos. 4 and 5 Participants' Agreement between [Participant] and the Washington Public Power Supply System.

I am familiar with your official proceedings authorizing execution and delivery of the Agreement and with all contracts, instruments and documents to which you are a party that might affect the validity or operation thereof.

It is my opinion:

(a) That the Agreement has been duly authorized, executed and delivered by [Participant] and constitutes a valid and binding agreement of [Participant], enforceable in accordance with its terms.

(b) That the authorization, execution, and delivery by [Participant] of the Agreement and compliance by [Participant] with all the terms and provisions thereof to be carried out and performed by it do not conflict with and are not in violation of any law of the State.... (¶ 163, ¶ 115)

The complaints allege that the representation made in paragraph (a) of each opinion letter was false. (¶ 170, ¶ 122) This falsity is explained in subsequent allegations to have resulted from the failure of defendants to disclose "material adverse information about Supply System Project Nos. 4 and 5 and the bonds financing them" and "substantial questions regarding the Participants' authority to enter into said agreements and/or that there was a substantial risk in investing in the bonds if the Participants were unable to or refused to perform their obligations." (¶¶ 179, 181; ¶¶ 133–135).

The plaintiffs further allege that the defendants knew that Projects 4 and 5 would be financed by bond offerings and that the success of the bond offerings that financed Projects 4 and 5 depended upon the market being convinced that the Participants' Agreement had been "duly authorized, executed, and delivered" and "constituted a

valid and binding agreement ... enforceable in accordance with its terms." (¶ 175; ¶ 127)

The plaintiffs further allege, on information and belief, that Supply System bond and special counsel relied on, and essentially republished, defendants' opinion letters in rendering their own opinion letter published as part of the Official Statement accompanying each bond offering. (¶ 177, ¶ 129) The individual defendants are not identified anywhere in any offering materials, but the opinion letter of special and bond counsel states,

In rendering this opinion, we have relied upon the opinion of counsel for each of such Participants and said Company that the Participants' Agreement or Ownership Agreement to which said Participant or Company is a party has been duly executed and delivered by such Participant or Company and is not in conflict with, or in violation of, and will not be a breach of, or constitute a default under, the terms and conditions of any other agreement or commitment by which such Participant or Company is bound. (¶ 177)

Essentially, these allegations are the basis for the plaintiffs' claims that defendants are either primarily or secondarily liable for securities fraud violations. Before looking more carefully at what is, and is not, alleged against these defendants, a quick review of the relevant law to be applied to these claims is in order.

Rule 10b–5, promulgated under § 10(b) of the 1934 Exchange Act, makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b–5(b). Construed in the broadest terms, this rule could require persons even peripherally involved in securities transactions to become the guarantors of the accuracy of their statements, even those made negligently or in good faith. While it has been easy for courts to reject that kind of extreme interpretation of secu-

rities fraud liability, the precise limits of the duty imposed by Rule 10b–5 has been subject to varying definitions.

■ In the Ninth Circuit, a flexible duty test is used in determining whether the actions of a particular defendant are subject to Rule 10b–5 liability. *See White v. Abrams*, 495 F.2d 724 (9th Cir.1974).[6] This test recognizes that the duty owed by a defendant to a plaintiff will vary according to the factual setting. The flexible duty test provides a framework of five factors to be considered by the Court in assessing the scope of duty, and hence, potential 10b–5 liability of an individual defendant. The five factors to be considered under the flexible duty test are:

1. the relationship of the defendant to the plaintiff;
2. the defendant's access to information as compared to the plaintiff's access;
3. the benefit that the defendant derives from the relationship with the plaintiff;
4. the defendant's awareness of plaintiff's reliance;
5. the defendant's activity in initiating the securities transaction in question.

In applying this test on a motion to dismiss, the court must consider the allegations in the complaint relevant to each of these factors and determine whether those allegations are sufficient as a matter of law to support a finding of a duty on the part of the defendants to the plaintiffs. No one factor in the test is determinative, and the analysis to be engaged in by the court is a qualitative one in which the various factors must be judged in relation to each other. *See Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 813 (9th Cir.1981); *Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1297 (9th Cir.1979). This means that when allegations are lacking or are very weak as to any of the flexible duty factors, allegations as to the remaining factors accordingly should be stronger.

The first factor to be considered is the relationship of the defendants to the plaintiffs. The only relationship between the defendants and plaintiffs alleged here is a very indirect one. Plaintiffs allege that the defendants provided opinion letters to their clients, the Participants, that were in turn provided to the bond and special counsel who in turn relied on the opinion letters in rendering their own opinion letters contained in the Official Statements on which the market relied. There are no allegations that any of the defendants was identified individually or even as counsel of any particular Participant in any documents reaching the market. The opinion letters of bond and special counsel published in the Official Statements explicitly referred only to reliance on the opinion letters of local counsel for procedural matters that have not specifically been alleged to be false or misleading.[7] It is also significant that the opinion letter of bond and special counsel, the mechanism through which the defendants are alleged to have misled the market and thereby misled plaintiffs, specifically does not opine as to the authority of sixteen of the Participants. Since there was

---

6. Plaintiffs raise the argument that the duty to disclose analysis is not applicable to their claims because this is a case of affirmative misrepresentations rather than omissions. It is clear from plaintiffs' allegations, however, that the claims against defendants relate to risks and other information that was not disclosed by defendants at the time of signing the opinion letters or later. The claims here are analogous to those in *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335 (9th Cir.1980) relating to an audit opinion written by defendant accounting firm that allegedly misrepresented the financial condition of the audited company. In that case the court applied the flexible duty analysis to determine the scope of duty owed by defendant in preparing the audit opinion.

7. In stating that they relied on the opinion of local counsel as to certain matters, bond and special counsel left out any reference to the local counsels' opinion that the Participants' Agreement "constitutes a valid and binding agreement enforceable in accordance with its terms," and instead referred only to those opinions of local counsel that the Agreement "has been duly executed and delivered ... and is not in conflict with, or in violation of, and will not be a breach of, or constitute a default under, the terms and conditions of any other agreement or commitment...." (¶ 177)

no way for the market to have identified which local counsels' opinion letters were not relied on by bond and special counsel, plaintiffs' relationship with any particular defendant is open to serious question. Moreover, there are no allegations of any relationships among the defendants that would permit a finding as to one defendant to be applied to the other defendants.

The relationships that are clearly alleged in the complaints are between the defendants and their respective clients and perhaps also between the defendants and bond and special counsel. Defendants are alleged to have signed opinion letters to their clients, the Participants, knowing that such letters would be passed on to bond and special counsel who would rely on the letters in rendering the opinion letters published in the Official Statements. Any alleged relationship with the plaintiffs is at most indirect through these other relationships. The defendants' opinion letters were executed a full year prior to the issuance of any bonds. There are no allegations that the defendants participated in any way in the preparation of the Official Statements or any other offering materials. Neither are there allegations that the defendants continued in the representation of their respective clients after the execution of the opinion letters as the Participants became involved in the issuance of bonds.

While it is certainly true that an indirect relationship with the plaintiff may be sufficient to impose a duty of disclosure on the defendant[8], the very tenuous nature of the link between plaintiffs and defendants here must be taken into account in applying the flexible duty test.

The second factor to be considered under the flexible duty test is the defendants' access to information. In this regard plaintiffs allege that many of the defendants were involved in the drafting and negotiation of the Participants' Agreements (¶ 161). Plaintiffs further allege that defendants had certain reservations regarding the validity of the Participants' Agreements based on a number of risks that "were known" to exist. (¶ 193) While knowledge of these risks is not alleged to be limited to defendants, it is reasonable to infer that defendants, as attorneys for the Participants, would have greater access to this kind of information than the plaintiffs. It is interesting to note plaintiffs' somewhat contradictory allegation that the defendants "did not independently investigate, research or consider the matters set forth in the opinion letters, but merely parroted the Sample Opinion Letter of Counsel" provided by the Supply System. (¶ 181)

The third factor to consider is the benefit to be derived by the defendant from the relationship with plaintiff. This factor in the flexible duty analysis has received considerable attention from the courts, presumably because it provides some concrete basis for a finding of motive and therefore scienter on the part of the defendant in engaging in securities fraud. In *Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1296 (9th Cir.1979), the court distinguished the duties owed under Rule 10b–5 among members of a group of nine defendants, each of whom was in a fiduciary relationship to plaintiff, on the basis of whether they stood to benefit from the allegedly fraudulent transaction. The *Kidwell* court imposed a duty to disclose only on those defendants who stood to profit by reason of their ownership of certain shares of stock, the value of which was enhanced by the securities transaction at issue. The five defendants who did not own such shares were found not to have a duty to disclose, even though they were in a fiduciary relationship to plaintiff.

The importance of allegations of benefit in the flexible duty analysis was also emphasized by the court in *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1271 (9th Cir.1979). In that case the court reversed the grant of summary judgment for a financial columnist alleged to have violated Rule 10b–5 when he personally purchased shares of a

---

**8.** *See Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808 (9th Cir.1981); *Spectrum Financial Companies v. Marconsult, Inc.*, 608 F.2d 377 (9th Cir.1979); *Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir.1979).

company prior to writing a favorable column about the company. The court stated that, "the federal securities laws, in guarding the public from abuses, strictly circumscribe the opportunities of persons holding certain positions to profit from their positions." *id.*

In the present cases, there are no allegations in the complaints specifically addressing the benefits that defendants derived from their relationships with plaintiffs. In their responding brief, plaintiffs argue that the allegations do "support an inference that defendants derived both substantial fees and the goodwill of their clients in engaging in the conduct alleged by plaintiffs." (Plaintiffs' Memorandum in Opposition at 20).

■ Even if that inference is made, however, the benefit to defendants does not derive *from their relationship with plaintiffs*. There are no allegations that the fees paid to defendants in connection with the opinion letters were in any way related to bond purchases made by plaintiffs beginning a year later. Neither are there allegations to support an inference that any defendant's continued employment as counsel for his client depended upon the future purchase of Project 4/5 bonds by investors. This is in marked contrast to the situation in *Spectrum Financial Companies v. Marconsult, Inc.*, 608 F.2d 377, 382 (9th Cir.1979), a case cited by plaintiffs for the proposition that the receipt of fees for professional services is sufficient to satisfy this part of the flexible duty analysis. In that case the court was careful to point out that in light of the client's bleak financial condition, the defendant's fees might not have been paid if the securities transaction at issue had not occurred.

This interpretation is supported in the later case of *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808 (9th Cir.1981). In its discussion of the benefit factor and the flexible duty test, the *Stephenson* Court emphasized that any compensation the defendants' hoped to receive would have to have come from the plaintiffs' investment. The Court then explicitly compared this to the situation of the defendant

in *Spectrum Financial* "whose fees were to be paid from the proceeds of the disputed transaction." 652 F.2d at 814, n. 7.

■ The allegations in the present complaints do not support the existence of any benefit to defendants derived from their relationships with plaintiffs. This factor of the flexible duty test requires that the benefits to defendants go beyond the payment of fees for professional services to include some connection to the securities transactions at issue. *See also Van Boeckel v. Weiss*, Fed.Sec.L.Rep. Paragraph 99,648 (N.D.Cal.1983); *Wright v. Schock*, 571 F.Supp. 642, 661 (N.D.Cal.1983).

The fourth factor under the flexible duty test is the defendant's awareness of plaintiff's reliance. This factor is closely related to the first factor discussed above, and, in fact, was characterized by the court in *White v. Abrams* as "the defendant's awareness of whether the plaintiff was relying upon their relationship in making his investment decisions." 495 F.2d at 735. Therefore, allegations as to the strength of the relationship between plaintiff and defendant are relevant to the issue of defendant's awareness that plaintiffs would rely on alleged misrepresentations made by defendants. Where the alleged relationship between plaintiffs and defendants is very attenuated, as was found to be the case in the discussion above, plaintiffs would not be expected to rely on defendants in making their investment decisions. Therefore allegations that defendants were aware that plaintiffs would so rely should be stronger and more specific to overcome that logical inference.

In their opposition brief, plaintiffs state that "[t]he Complaint alleges that defendants knew that their opinion letters would be relied upon by special counsel, bond counsel, the Supply System and their clients, and through those parties, the market." (Plaintiffs memorandum in opposition at 21). In support of this, plaintiffs point to two allegations: first, that the defendants knew that the success of the bond offering depended on the market being convinced that the Participants' Agreements were enforceable, (¶ 175), and sec-

ond, that the defendants "knew that their opinion letters were to be the basis for providing security for the bonds ..." (¶ 216). The first allegation does not, however, indicate that the defendants knew the market would become so convinced *by relying on defendants*. The second allegation does not connect the opinion letters to any reliance by the market.

There is no allegation that any plaintiff knew of any representation by these defendants beyond that paraphrased by bond special counsel in the Official Statements. Indeed, even that published opinion letter by bond and special counsel did not identify which defendants had opined, nor did it identify the sixteen defendants whose letters were not relied on by them. It is worthy of note that the part of the opinion letter executed by these defendants that is the most relevant to the claims here made was *omitted* from the Official Statements. The market was *not* told that these defendants represented that the agreement was "... a valid and binding agreement ... enforceable in accordance with its terms." Neither did the Official Statements relate the opinion of these defendants, that the agreement and its performance "... do not conflict with and are not in violation of any law of the State...."

Thus, when the market received the operative representations regarding the authority of the Participants, beginning a year after the opinion letters were executed and sent to the Supply System, these defendants had no need to disabuse the market of such opinions because they simply were not attributed to them.

Rather than overcoming the deficiencies in the allegations relating to the relationship between the plaintiffs and defendants, the allegations in support of this factor are equally attenuated.

The final factor to consider in the flexible duty analysis relates to defendants' initiation of the challenged transaction. Plaintiffs essentially concede the non-existence of this factor in arguing that the "defendants *and their clients* played a significant role in placing the bonds into the stream of commerce." (Plaintiffs memorandum in opposition at 22, emphasis added.) There are no allegations that the defendants themselves initiated or otherwise participated in any of the bond sales.

■ A review of all five factors of the flexible duty test shows that the allegations of the complaints are not adequate under any showing of facts to support a duty on the part of these defendants under Rule 10b-5. The alleged relationship between the defendants and plaintiffs is indirect at best, and arguably non-existent as to those lawyers whose opinion letters did not even indirectly reach the market through the opinion letters of bond and special counsel. The defendants' are not alleged to have received, or to have had the potential to receive, any benefit deriving from their relationship with plaintiffs. Given the very tenuous nature of the alleged relationship between defendants and plaintiffs, the allegations supporting any awareness by defendants that plaintiffs would rely on their opinion letters are deficient. Also lacking are allegations that tie these defendants to the initiation of any securities transactions engaged in by the plaintiffs. The only factor in the flexible duty analysis for which the allegations could be interpreted as supportive of the finding of a duty is the defendants' access to information, and even those allegations are not strong.

It is the conclusion of the Court that the foregoing application of the flexible duty test establishes beyond doubt that the plaintiffs can prove no set of facts, consistent with the allegations in the complaints, in support of their claims for primary liability of these defendants under the federal securities laws that would entitle them to relief.

That there is, as a matter of law, an insufficient nexus between defendant's opinion letters and plaintiffs claimed damage is well illustrated by class plaintiffs' efforts to impose liability against those attorneys who *correctly* opined that their clients had authority. The argued basis for this liability is that these defendants should have foreseen an unsuccessful attack on the Participants' authority. To so

hold would impose 10b–5 liability for breach of an implied guarantee against baseless or unsuccessful litigation. The motions to dismiss the claims for primary federal securities fraud liability are accordingly GRANTED.

*Secondary liability for securities fraud*

■ Plaintiffs also charge defendants with aiding and abetting liability based upon the same allegations. While liability as a secondary violator also requires that the defendant have been under a duty to disclose, that duty arises from "knowing assistance of or participation in a fraudulent scheme," *Strong v. France*, 474 F.2d 747, 752 (9th Cir.1973), rather than the position of the defendant and the relationship that exists between the defendant and plaintiff. *See Harmsen v. Smith*, 693 F.2d 932, 944 (9th Cir.1982). This distinction may be more semantic than real, however, where the involvement of the defendant in the securities transactions at issue is minimal.

It bears repeating that the only specific involvement in the bond selling process alleged against any defendant here is the form opinion letter signed and returned to his or her client a year before any bonds were sold. Moreover, the extent of even this involvement is diminished by the allegations in the complaint pertaining to the uses to which these local counsel opinion letters were put by bond and special counsel in preparing their opinion letter that was published in the Official Statements. In their published opinion letter, bond and special counsel explicitly limited their reliance on defendants' opinion letters to procedural matters not alleged by plaintiffs to have been misrepresented.[9]

Plaintiffs argue that "[w]idespread refusals to sign the opinions would plainly have brought the scheme to a halt and blocked all bond sales." (Plaintiffs' memorandum in opposition at 33) That kind of conclusory allegation is not well founded, however, where there are no allegations of any organization or relationship among the

defendants permitting an expectation of concerted action. In the absence of such allegations, fairness requires that the Court look to the actions of each individual defendant in isolation.

■ The Court can envision no set of facts, consistent with the allegations from the complaints, that would create in defendants the kind of duty to disclose sought to be imposed by plaintiffs. Involvement in the disputed securities transactions that is limited to a single form opinion letter, signed well before the issuance of any bonds, which was never directly conveyed to the market, cannot provide a legal basis for secondary liability. The motions to dismiss the plaintiffs' claims based on secondary liability are GRANTED.

*State law claims*

The *Mirotznick* plaintiffs assert federal jurisdiction based upon their claims under the federal securities laws. In light of the dismissal of the federal claims, this Court declines to exercise pendent jurisdiction over the remaining state law claims in that case. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In its complaint, Aetna bases federal jurisdiction over the state law claims on both pendent and diversity grounds. While the Court declines to exercise pendent jurisdiction in this case as in the *Mirotznick* case, diversity jurisdiction provides an independent, non-discretionary basis of subject matter jurisdiction for the state law claims. *See* 28 U.S.C. § 1332. It is not disputed by any of the parties, and the Court finds, that the requirements for the assertion of diversity jurisdiction are met in the *Aetna* case.

The assertion of *personal* jurisdiction by this Court is contested by certain defendants in *Aetna*. The only non-Washington defendants named in the *Aetna* complaint are certain Idaho attorneys and their respective law firms.[10] These Idaho defend-

---

9. *See* discussion at page 937 *supra*.

10. The Idaho Defendants are Wilson & Walter, a law partnership; Peter B. Wilson; Neal O. Walter; Parsons & Smith, a law partnership; Wil-

ants move to dismiss the *Aetna* complaint under Rule 12(b)(6) for lack of jurisdiction. As discussed above,[11] the test for finding personal jurisdiction in connection with the federal securities claims is quite broad. The dismissal of the federal securities claims, however, makes this broader test no longer applicable and requires the Court to determine whether it has personal jurisdiction over the Idaho defendants on the remaining state law claims.

The Washington long arm statute, RCW 4.28.185(1)(b), provides for jurisdiction over any person who transacts business or commits a tortious act within the state. Where the defendant's contacts with the forum are limited, both the Washington courts and the Ninth Circuit have employed a three part analysis in determining whether due process permits the assertion of personal jurisdiction: 1) the defendant purposely availed him or herself of the privilege of conducting activities in the forum; 2) the claim arises out of or results from the contact with the forum; and 3) the exercise of jurisdiction must be reasonable. *See Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280 (9th Cir.1977); *Smith v. York Food Machinery Company,* 81 Wash.2d 719, 504 P.2d 782, 784 (1972). This analysis is grounded in the constitutional requirements that the defendant have such "minimum contacts" with the forum state that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and that those contacts are such that the defendant "should reasonably anticipate being haled into Court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ In the present case, the Idaho defendants' relevant contacts with the State of Washington center on the 1976 opinion letters. Briefly stated, the Idaho defendants argue that an opinion letter construing Idaho law, written in Idaho to Idaho clients is insufficient to permit jurisdiction in this Court. They maintain that their contact with Washington through these opinion letters was only incidental to services to their client and did not constitute purposeful conduct directed at Washington. The Idaho defendants further argue that personal jurisdiction over them cannot be based on activities done on behalf of their clients.

Aetna essentially argues that the tortious out-of-state conduct by these defendants causing injury in Washington is adequate to support jurisdiction. Aetna points out that the opinion letters signed by the defendants pertained to an agreement with a Washington public entity, the Washington Public Power Supply System (WPPSS), and that the opinion letters were issued by defendants in response to a letter, with attached copies of a bond resolution and the Participants' Agreement relating to the construction and financing of two nuclear power plants in Washington, sent by WPPSS to the defendants' clients. Aetna further argues that in engaging in the activities at issue here, defendants were acting independently rather than as agents for their clients.

The existence of personal jurisdiction under these circumstances is a difficult and close question. Briefing by both the Idaho defendants and Aetna on this issue is thorough and compelling. A careful analysis of the many cases cited by both sides has lead the Court to conclude that personal jurisdiction may properly be asserted over the Idaho defendants on the state law claims.

These Idaho attorneys did not provide a confidential opinion letter to their clients regarding their entry into the agreement with WPPSS. Rather, they signed an opinion letter intended to be relayed on to WPPSS and bond and special counsel in Washington. This is the very conduct that

---

liam A. Parsons; Richard K. Smith; Church, Church & Snow, a law partnership; Thomas H. Church; Peter K. Church; Peter G. Snow; Goodman, Duff & Chisholm, a law partnership;

William T. Goodman; Larry R. Duff; Donald J. Chisholm; and Donald Robert Workman.

**11.** *See supra* p. 934–35.

is alleged to have been tortious and to have resulted in injury in Washington. The defendants are not charged with untargeted negligence but rather with tortious conduct knowingly directed at important matters in the forum state. Under those circumstances, the defendants should have reasonably expected to have been haled into court here to answer for their actions. *See Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Werner v. Werner*, 84 Wash.2d 360, 526 P.2d 370 (1974).

Whether or not the defendants' conduct is ultimately adjudicated to be tortious or otherwise actionable under state law is not germane to the determination of this Court's power to exercise jurisdiction over defendants in proceeding with that adjudication. The Idaho defendants' motions to dismiss the state law claims for lack of personal jurisdiction are DENIED.

*Common law fraud and deceit and negligent misrepresentation*

■ All of the defendants in *Aetna* move to dismiss the third and fourth claims, for common law fraud and deceit and for negligent misrepresentation, on various grounds. In ruling on these motions the Court has applied the common law of the forum.

Washington courts have imposed liability for fraud, deceit, or negligent misrepresentation in only two types of situations. The first is a situation in which one of the parties in a face-to-face transaction has superior knowledge to the other party. *See, e.g. J & J Food Centers, Inc. v. Selig*, 76 Wash.2d 304, 456 P.2d 691 (1969); *Farrell v. Score*, 67 Wash.2d 957, 411 P.2d 146 (1966); *Rogers v. City of Toppenish*, 23 Wash.App. 554, 596 P.2d 1096 (App.1979); *Wilbur v. Western Properties*, 22 Wash. App. 458, 589 P.2d 1273 (App.1979). The second situation in which Washington courts have imposed liability for fraudulent or negligent misrepresentations is where there is a fiduciary relationship among the parties. *See, e.g. Mattieligh v. Poe*, 57 Wash.2d 203, 356 P.2d 328 (1960); *Burien Motors, Inc. v. Balch*, 9 Wash.App. 573, 513 P.2d 582 (App.1973); *Andersen v.*

*Northwest Bonded Escrows, Inc.*, 4 Wash. App. 754, 484 P.2d 488 (App.1971).

Aetna has not alleged that misrepresentations occurred in the course of face-to-face transactions with defendants nor has it alleged that the defendants were in a fiduciary relationship to it.

The Court is aware of the California cases that would not necessarily limit these common law claims to face-to-face transactions or those involving a fiduciary relationship. *See Vasquez v. Superior Court of San Joaquin County*, 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (1971); *Gaillard v. Arthur Young*, Fed.Sec.L.Rep. Paragraph 92, 339 (N.D.Cal.1985). The Court recognizes, however, that these cases go well beyond the parameters set down in Washington common law and this Court is obliged to apply the law of Washington to the best of its ability.

The motions to dismiss the common law fraud and deceit, and negligent misrepresentation claims are GRANTED.

*Washington State Securities Act*

The defendants in *Aetna* also move to dismiss the plaintiff's second claim, for violation of RCW 21.20.010 *et seq.*, the Washington State Securities Act (WSSA). The defendants' primary contention is that the only right of action for violations of the WSSA is provided by its express remedy provision, RCW 21.20.430, and that they do not fall within the categories of persons liable thereunder. Plaintiff argues that there is an implied right of action for violations of RCW 21.20.010, the anti-fraud provision of the WSSA, and, in any case, that the defendants do come within the ambit of RCW 21.20.430.

■ RCW 21.20.010 is modeled after § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. RCW 21.20.900 provides that the WSSA is to be construed "to coordinate the interpretation and administration of this chapter with the related federal regulation." There is nothing in the legislative history or judicial interpretations of RCW 21.20.010 to indicate that the duty owed pursuant to an implied right of action un-

der this provision, if it exists, is any broader than is the case for the implied right of action under § 10(b) of the Securities and Exchange Act. That is not to say that once such a duty is found, the standard of fault to be applied is necessarily the same. This Court's earlier analysis of the duty owed by these defendants under § 10(b) was not dependent upon any particular standard of fault and is equally applicable to Aetna's claim under the WSSA. Based on that analysis, a right of action against defendants under RCW 21.20.010 will not be implied.

RCW 21.20.430 provides an express right of action for violation of the WSSA but limits those liable to certain categories of persons. Subsection (1) provides a right of action against the offeror or seller of securities and subsection (3) expands the right of action to include persons bearing certain relationships to those liable under subsection (1) such as control persons, partners, officers, directors and persons who occupy a similar status as well as employees who materially aid in the transaction.

Aetna does not allege that the defendants had any relationship with either WPPSS or the Underwriters, the only entities that arguably come within the ambit of RCW 21.20.430(1). The allegations of a relationship between the defendants' clients and WPPSS does not serve to bring the defendants themselves within the ambit of RCW 21.20.430(3). It is the conclusion of the Court that the defendants in this case are not within the categories of persons against whom an express right of action is provided by RCW 21.20.430.

The motions to dismiss the Washington State Securities Act claim are GRANTED.

The Clerk is directed to enter judgment in favor of all defendants and against plaintiffs.