[No. 42412.    En Banc.    December 28, 1972.]

CHARLES L. SMITH, *Respondent*, v. YORK FOOD MACHINERY COMPANY *et al., Petitioners.*

*Nashem, Prediletto, Brooks & Schussler* and *Norman R. Nashem, Jr.,* for petitioners.

*Charles T. Morbeck,* for respondent.

STAFFORD, J.—The trial court denied petitioners' motion to dismiss for lack of personal jurisdiction. They seek re-

view by writ of certiorari, contending that the court exceeded its jurisdiction.

Charles Smith was employed by Lamb-Weston Company, Inc., in Connell, Washington. He was injured April 9, 1970, while cleaning a food processing machine. A label affixed to the machine revealed that it had been "Manufactured for York Food Machinery Company, by John C. Motter, Printing Press Company, Columbia, Pennsylvania." In 1960, York, a wholly owned subsidiary of Motter, sold the machine to Seabrook Farms Company of Lewiston, Idaho. Several years later Seabrook transferred the then used machine to Lamb-Weston. Smith alleges the machine, which had a long-term useful life, was defectively manufactured.

Neither York nor Motter has maintained an office or been registered to transact business in Washington. However, both have advertised in national magazines circulated in the state, York in 1957 and 1958, and Motter from 1953 to the present. Further, York has mailed advertising literature to potential customers in Washington and has communicated by telephone or telegram with them. These contacts did not, however, include Lamb-Weston.

In 1962, York sold a similar food processing machine to General Foods Corporation for use in its plant in this state. In 1964 and 1966, Motter sold printing press equipment for use in Washington by Scott Paper Company. Prior to this cause, neither York nor Motter knew the machine in question was being used in Washington.

Petitioners, York and Motter, moved to dismiss the action for lack of personal jurisdiction contending that due process precluded the trial court from assuming personal jurisdiction. The trial court denied the motion, holding that it had jurisdiction under RCW 4.28.185 (1) (b). We agree with the trial court and limit our discussion to RCW 4.28.185 (1) (b).

RCW 4.28.185 reads in part as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said

person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

    (a) The transaction of any business within this state;

    (b) The commission of a tortious act within this state;

. . .

    (3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

RCW 4.28.185 enlarged personal jurisdiction over foreign corporations and nonresident defendants. *Quigley v. Spano Crane Sales & Serv., Inc.,* 70 Wn.2d 19, 422 P.2d 512 (1967). Such "long-arm" jurisdiction is limited, however, by the terms of the statute and the due process clause of the United States Constitution. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963); *Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 497 P.2d 1311 (1972).

In *Tyee* we enumerated three criteria which must be present to subject foreign corporations and nonresident defendants to the personal jurisdiction of this state under RCW 4.28.185(1)(a).

In *Deutsch,* at 711, we reiterated the criteria as applicable to RCW 4.28.185(1)(b) as follows:

    (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

The first criterion outlines the statutory requirements of RCW 4.28.185(1)(a) and (b). The second expresses the limitations set forth in RCW 4.28.185(1) and (3). The third

criterion is not based upon the statute but enumerates several nonexclusive factual considerations to aid in determining whether the due process right of foreign corporations or nonresident defendants precludes the assumption of jurisdiction. *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967).

Where damage results from a defendant's negligence, the injury which occurs in this state is an inseparable part of the "tortious act" as that term is used in the statute. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 471, 403 P.2d 351 (1965); *Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968); *see also Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963). Whether a "tortious act" was actually committed in the instant case is not presently before us. That issue must be determined later by the trier of fact. Nevertheless, respondent's pleadings allege that injuries were suffered in this state as a result of petitioners' negligence in the design and manufacture of a machine in another state. Since respondent's injury is alleged to have occurred in this state and since it is an inseparable part of the "tortious act," the "tortious act" is deemed to have occurred here. Thus, the first and second criteria are satisfied.

The third criterion of *Deutsch* requires an inquiry into the facts to determine whether the assumption of jurisdiction offends traditional notions of fair play and substantial justice. Petitioners argue that the trial court's assumption of jurisdiction does not comport with due process when one considers the required "minimum contacts", "purposeful acts," and other facts which bear upon "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945); *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958). Accordingly, they contend that the alleged "tortious act" does not result in liability because personal jurisdiction has not been constitutionally obtained by the court. They cite *Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967).

Petitioners' reliance on *Oliver* is not well founded. There the plaintiffs, residents of Oregon, purchased a new automobile from an Oregon retail dealer. While on a trip in Washington they were overcome by carbon monoxide gas due to a faulty exhaust system and a defectively sealed trunk. In affirming an order of dismissal as to the car dealer, we stated at page 890:

> We hold that where a merchant *in another state makes a sale and delivery of personalty in the regular course of his business in that other state and does nothing further* than complete the sale there, he has not "submitted" to the jurisdiction of the Washington courts even though the article sold may thereafter be instrumental in causing harm in Washington when brought here by the customer.

(Italics ours.)

On the other hand, we have held that the necessary minimum state contact exists if a nonresident manufacturer knowingly places its goods in the broad stream of interstate commerce. In that event, the manufacturer is charged with knowledge that such conduct may have consequences in another state. *Omstead v. Brader Heaters, Inc.*, 5 Wn. App. 258, 487 P.2d 234 (1971) as adopted by this court in 80 Wn.2d 720, 497 P.2d 1310 (1972); *see also Oliver v. American Motors Corp., supra.*

■ In the instant case, petitioners were involved in activities within this state. They advertised in trade magazines circulated here; they mailed literature to potential customers here; and, they communicated by telephone and telegraph with food processors here. Without question, the purpose of such activity was to exploit the potential market in this state. Further, petitioners actually sold other machines for use in Washington. Thus, the necessary "minimum contacts" are present. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra; Bowen v. Bateman*, 76 Wn.2d 567, 458 P.2d 269 (1969).

Petitioners seek to avoid the impact of being classified as a manufacturer who has knowingly placed its goods into

the broad stream of interstate commerce. They contend that they are actually retailers. Their argument stems from an attempt to compare themselves to the retail automobile dealer in *Oliver*. In *Oliver* we distinguished between the automobile manufacturer and the local retail dealer and held that, insofar as the dealer was concerned, no inference of "minimum contacts" was warranted. We stated at page 889:

> The distinction is obvious. Though it may be just to infer minimal contacts as to a manufacturer who produces goods and puts them into the broad stream of interstate commerce as was done in *Gray v. American Radiator & Standard Sanitary Corp.* [22 Ill. 2d 432, 176 N.E.2d 761 (1961)], *supra*, and as was done, in fact, in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra;* we believe that no such inference is warranted where there is a sale by an out-of-state retailer to his local customer, *if nothing further appears by way of a purposeful act on his part or possession of information, which would in any way charge the retailer with knowledge that his transaction might have out-of-state consequences.*

(Italics ours.)

In this case, however, petitioners' attempted comparison fails. First, without question, they are manufacturers. Second, even if they may have sold some products directly to consumers in a manner similar to that of a retailer, that fact standing alone does not solve the jurisdictional problem. Petitioners' previously discussed purposeful methods of exploiting the potential out-of-state market, and of knowingly making out-of-state sales by placing their products in the broad stream of interstate commerce clearly brings them within the italicized qualifying clause of the *Oliver* quotation set forth above. Thus, under the facts of this case, whether petitioners are classified as retailers or manufacturers, the inference of "minimum contacts" is proper.

It is not unforeseeable that a company using a large machine with a long-term useful life, as the one here, will sell or transfer it to another company in an adjoining state.

This is particularly true if the manufacturer has attempted to create a potential market for its products in that neighboring state by the use of advertising and customer contact. Thus, the scope of one's marketing activity is an important consideration in determining whether the assumption of jurisdiction over an out-of-state defendant, under RCW 4.28.185 (1) (b), offends traditional notions of fair play and substantial justice.

The retail car dealer in *Oliver* merely completed a sale in his own state to a resident of that state. In contrast, petitioners' marketing activity in Washington constituted a purposeful act and furnished them with constructive knowledge that their conduct might have consequences in Washington. Under these circumstances, petitioners cannot reasonably claim they are surprised at being held to answer for such damages as their product may have caused here. *Deutsch v. West Coast Mach. Co., supra,* and *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra.*

Furthermore, the most convenient forum is in Washington. The accident happened here. The plaintiff, as well as most of the witnesses, resides in Washington. The cost to present respondent's case elsewhere might be prohibitive and the courts of this state have an interest in protecting its citizens. *See Nixon v. Cohn, supra.*

Assumption of personal jurisdiction over petitioners in the instant case does not "offend traditional notions of fair play and substantial justice," within the contemplation of the due process clause. RCW 4.28.185 (5) adequately protects petitioners. If they prevail they will be entitled to costs and reasonable attorneys' fees.

The order denying the motion to dismiss is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, WRIGHT, and UTTER, JJ., concur.