[No. 10380-0-II.   Division Two.   August 14, 1987.]

RUSSELL XAVIER FERNANDEZ, *Appellant,* v. THE
DEPARTMENT OF HIGHWAYS, ET AL,
*Respondents.*

*Daniel F. Sullivan, Phillip Offenbacker,* and *Christopher L. Otorowski* (*Melvin M. Belli, Sr.,* and *Richard E. Brown,* of counsel), for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *David E. Walsh, Deputy; Dave Frohnmayer, Attorney General for the State of Oregon, James Mountain, Jr., Solicitor General,* and *Michael D. Reynolds, Assistant; Hugh J. Potter; James M. Thomas, Sheri L. Flies,* and *Diamond & Sylvester,* for respondents.

ALEXANDER, J.—Russell Fernandez appeals summary judgment orders of the Clark County Superior Court in favor of the states of Washington and Oregon, and Sverdup & Parcel & Associates (S & P). He asserts that the trial court erred in concluding as a matter of law that: (1) he was a trespasser, and (2) the defendants did not breach their duty to refrain from willfully and wantonly causing injury to him. He also contends that the trial court erred in concluding that it lacked jurisdiction over the State of Oregon. We find no reversible error. Therefore, we affirm.

Fernandez filed suit against S & P and the states of Washington and Oregon, claiming that their negligence in designing and maintaining the Glenn Jackson Bridge caused his injury. Washington and S & P moved for summary judgment, claiming that Fernandez was a trespasser and that the only duty they owed him was to refrain from willfully and wantonly injuring him, a duty they claim they did not breach. Oregon also moved for summary judgment, contending that Washington did not have jurisdiction over it and that it was not liable for Fernandez' injuries. The affidavits, interrogatories and depositions that were considered by the trial court, when viewed most favorably to Fernandez, reveal the following facts.

On January 7, 1983, Russell Fernandez was injured when

he fell from the Glenn Jackson Bridge. The fall occurred when Fernandez attempted to jump from the motor vehicle lanes of the bridge onto a pedestrian path, which was located on the bridge between, but below, the traffic lanes at the point where Fernandez jumped.

Glenn Jackson Bridge is part of Interstate Highway 205 and spans the Columbia River between Washington and Oregon near Vancouver, Washington. The bridge has motor vehicle lanes as well as a 9–foot–wide pedestrian path, which, for the most part, runs parallel to and between the north– and southbound motor vehicle lanes. The pedestrian path is separated from the motor vehicle lanes on both sides by concrete barriers that are approximately 2½ feet high.

On the Washington side of the bridge, the pedestrian path is connected to the ground below the bridge by a ramp that gradually ascends for approximately 300 feet before it reaches the level of the motor vehicle lanes. The ramp to the path begins its ascent to the bridge level at a location somewhat south of the point where the bridge joins the ground level of Interstate 205 on the Washington side of the Columbia River (see diagram showing an overview and side view of the pertinent portions of the bridge).

Interstate 205 is a limited access freeway. Therefore, the use of the vehicle lanes, shoulders and on–ramps of the bridge is limited to motorized vehicles. Pedestrians and nonmotorized vehicles are prohibited from using these portions of the bridge, and the public is warned of these restrictions by clearly visible signs in place on the bridge and its on–ramps.

The bridge was constructed pursuant to an agreement between the states of Oregon and Washington. The agreement originally provided that Oregon would be responsible for the design of the bridge. Oregon hired S & P to design the structure, including the pedestrian path. Washington's agreement with Oregon was modified in 1977 so that Washington assumed sole responsibility for design of the

bridge on the Washington side.[1] Oregon, however, administered the illumination and paving contracts, as well as the maintenance of the entire bridge.

PEDESTRIAN – BICYCLE PATH

To Oregon

Washington

10% GRADE ON RAMP

At the time the bridge was opened for automobile traffic, the pedestrian path was left unopened because it was not yet completed and because the bridge lighting was not yet operational. Consequently, Washington authorities barricaded the entrance ramps to the pedestrian path with a chain link fence bearing a sign that stated "Pedestrian and Bike Path Closed." Extending out from the fence from both sides were two more chain link fences topped with barbed wire. Barriers were also placed at various points along the pedestrian path, together with signs advising that the path was closed.

Three times before Fernandez's accident, Fernandez

---

[1]There is no evidence that Washington retained another designer, and the degree to which the State modified S & P's design, if it did, is not apparent from the record.

jogged on the closed pedestrian path, ignoring the barriers and signs. The first time Fernandez jogged on the pedestrian path, a gate had been left open. The next two times, the gate was closed and locked. On these occasions, Fernandez saw the fence and barbed wire and chose to climb around the barrier to jog on the pedestrian path.

On January 7, 1983, Fernandez decided to jog on the bridge again. In order to avoid climbing around the barriers, he elected this time to jog onto the motor vehicle lane of the bridge by way of a cloverleaf that connected with State Route 14. Fernandez saw the signs prohibiting pedestrians on the freeway, but he ignored them because he had seen people jogging on the freeway in the past. After jogging for a short period on the right shoulder of the southbound lanes of the bridge, Fernandez crossed four lanes of traffic and began jogging on the far left shoulder of the southbound lanes.

After reaching the left shoulder, Fernandez became concerned about being hit by a vehicle from behind, so he decided to get onto the pedestrian path. While still jogging, he glanced over the barrier several times and saw below what he thought were "puddles on the [pedestrian] path." Without breaking stride, Fernandez leaped over the barrier, anticipating that he would land without difficulty on the pedestrian path. Unfortunately, at the point where Fernandez jumped, he was about 300 feet short of where the pedestrian path reached the same elevation as the roadway. Consequently, he fell some 57 feet and landed on the ground below, near SR 14. He was severely injured.

The trial court granted summary judgment for Washington and S & P, holding that Fernandez was a trespasser who knew of the dangerous condition, and that Washington and S & P did not breach any duty as to Fernandez. The trial court granted Oregon's motion, holding that the Washington court lacked jurisdiction over Oregon and that, in any case, Oregon breached no duty as to Fernandez. Fernandez appealed directly to the Supreme Court, which transferred the case to this court.

A summary judgment is properly granted only if the pleadings, affidavits, depositions and admissions in the file "demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Issues of negligence may be decided on summary judgment where the undisputed facts do not allow reasonable differences of opinion. *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975).

Fernandez first argues that this court should abandon the common law distinctions of trespasser, licensee and invitee when determining the duty of an owner of land to those on his property. The same argument was recently rejected by the Supreme Court in *Younce v. Ferguson,* 106 Wn.2d 658, 724 P.2d 991 (1986). We are obliged to follow *Younce.*

Fernandez next asserts that notwithstanding the common law distinctions between users of land, he was a user of the highways, not a trespasser, and that the government's duty to persons using highways is one of reasonable care, the same duty a landowner owes to a licensee or invitee. *Egede–Nissen v. Crystal Mt., Inc.,* 93 Wn.2d 127, 606 P.2d 1214 (1980). We agree with Fernandez only to this extent: The government has the duty to exercise reasonable care with respect to people using the highway in a *proper manner. Stewart v. State,* 92 Wn.2d 285, 597 P.2d 101 (1979). As the court in *Stewart* stated:

> [I]f the State were required to anticipate and protect against all imaginable acts of negligent drivers, it would become an insurer against all such acts. Rather its duty is to maintain its roads in such a condition that *they are reasonably safe for persons using them in a proper manner and exercising ordinary care for their own safety.*

(Italics ours.) *Stewart,* 92 Wn.2d at 299. *See also Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 777, 632 P.2d 504 (1981); WPI 140.01. However, a motorist using a highway that is not open to traffic is a trespasser. *See* 4 *Blash-*

*field on Automobiles* § 163.10, at 378 (3d ed. F. Lewis 1965). Likewise, we believe that a pedestrian using a highway or bridge that is not open to pedestrian traffic is a trespasser. In such cases the government's duty to that person is less, and in our judgment, the government owes that person only the duty to refrain from willfully and wantonly injuring him. *Blashfield.*

■ There can be no dispute over the fact that when Fernandez attempted to run on the closed pedestrian path by crossing the bridge on which pedestrians were prohibited, he was not using the bridge in a proper manner. That being the case, he was a trespasser, and, as such, the government owed Fernandez only the duty to refrain from willfully and wantonly injuring him.

Fernandez argues that the trial court erred in holding that no triable issue of fact existed as to whether the defendants[2] engaged in willful and wanton misconduct toward him. His argument is meritless.

■ ■ Willful and wanton misconduct was defined in *Adkisson v. Seattle,* 42 Wn.2d 676, 684, 258 P.2d 461 (1953):

> "To constitute wilful misconduct, there must be actual knowledge, or that which the law deems to be the equivalent of actual knowledge, of the peril to be apprehended, coupled with a conscious failure to avert injury. A wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom. . . ."

No evidence exists that would indicate that any of the defendants acted willfully or wantonly toward Fernandez. Not only did they not engage in such misconduct, but they acted prudently in putting up barriers and warning signs in an effort to keep pedestrians off the bridge and the pedestrian path. These defendants are not clothed with a duty to

---

[2]It has not been suggested that S & P, the bridge designers, owed any greater duty to Fernandez than did the owners of the land, Oregon and Washington. Because Fernandez has not presented us with any authority to the contrary, we assume that the duty is no greater.

prevent someone from going to such extraordinary and reckless lengths to avoid barriers, run in the midst of automobile traffic, and leap into the unknown. Reasonable minds could reach no other conclusion but that the defendants breached no duty to Fernandez.

Fernandez next argues that he was not a trespasser, but an invitee. His argument is meritless. In order for Fernandez to be an invitee, he must show "(1) an express permission or invitation, or (2) that the prior conduct of the owner be such as to lead one to believe that he has implied permission or an implied invitation to enter upon the owner's premises." *Winter v. Mackner,* 68 Wn.2d 943, 945, 416 P.2d 453 (1966).

Fernandez indicates that he saw a television news broadcast of the opening ceremonies of the bridge in which persons were shown walking on the bridge. From this, he inferred an invitation to jog on the bridge. No such invitation may be inferred. In light of the visible signs and barriers erected on the bridge, it is clear that the bridge was limited to motor vehicles at the time in question. Fernandez admitted that he personally was aware that signs prohibited pedestrians from the roadway and that the pedestrian path was barricaded from the public. In fact, Fernandez specifically went onto the automobile traffic lanes of the bridge to avoid the pedestrian path barriers. There is no evidence that supports an invitation, implied or express, for Fernandez to use the bridge as he did.

Fernandez next argues that the jury should be allowed to determine whether Fernandez was aware that the path was not level with the roadway at the point where he jumped.[3] He asserts that if he was not aware, the defendants had a duty to warn him of the condition. We disagree.

---

[3]Fernandez cites the case of *Bonney v. Canadian Nat'l Ry.,* 613 F. Supp. 997 (D. Me. 1985), for the proposition that a possessor of land must warn trespassers of a dangerous condition in order to meet his duty of avoiding willful and wanton misconduct. This case, however, was reversed in *Bonney v. Canadian Nat'l Ry.,* 800 F.2d 274 (1st Cir. 1986). In *Bonney,* the First Circuit held that the railroad had no duty to make the bridge safe where the trespasser knew of the danger.

As we have said, the only duty the defendants owed to Fernandez was to refrain from willfully and wantonly injuring him. Even if the defendants had a greater duty to Fernandez, there is no duty to warn when the person knows of the condition. *Hansen,* 95 Wn.2d at 780. Although Fernandez may not have been aware of the fact that the path was not level with the bridge at the point when and where he jumped, he did have general knowledge of the configuration of the ramp, path, and bridge. He admitted to driving below and on the bridge so that he knew the layout of the bridge in relation to the pedestrian path. Fernandez also admitted that he knew that the pedestrian path was not level with the bridge at all points. Finally, Fernandez stated in his deposition that he knew that a "hole" existed between the north– and southbound motor vehicle lanes up to the point where the pedestrian path reached the level of the motor vehicle lanes. Reasonable persons could only conclude under these facts that the defendants had no duty to give any greater warnings than they gave. *See Hansen v. Washington Natural Gas Co., supra.*

In concluding, as a matter of law, that S & P and Washington breached no duty to Fernandez, we are certainly not unmindful of the fact that this was a tragic incident. That fact is not diminished by the legal conclusions we have reached. However, owners of property are not insurers against all happenings that occur on the premises. Here, the record clearly shows that Fernandez was a trespasser when he came upon the bridge, disobeying reasonable efforts to prevent his entry. He simply used incredibly bad judgment when he leaped from the bridge, as he did, in an attempt to get to the pedestrian path. Under the circumstances of this case, the defendants should not be held responsible for Fernandez' grave error in judgment.

Fernandez next asserts that the trial court erred in concluding that it lacked jurisdiction over Oregon. The trial court held that it did not have jurisdiction over Oregon because Oregon lacked minimum contacts and because principles of comity prevented Washington from exercising

jurisdiction. Although we believe that the trial court erred in failing to find minimum contacts sufficient for jurisdiction, we hold that the trial court did not err in concluding that principles of comity dictate that this State decline to assume jurisdiction over Oregon.[4]

RCW 4.28.185 provides:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . .

(b) The commission of a tortious act within this state;[5]

We believe that the State of Oregon falls under this statute. Oregon purposefully aided in the building and maintenance of the bridge by its administration of the paving and illumination contracts and by its maintenance of the entire bridge. Fernandez' claim is that the accident is connected with the building and maintenance of the bridge, and Oregon's extensive involvement along with Washington in the construction and maintenance of the bridge provides sufficient minimum contacts to allow Washington to assert jurisdiction over Oregon without offending traditional notions of fair play and substantial justice.

■ Notwithstanding the existence of jurisdiction, principles of comity allow states to decline jurisdiction over another state in order to promote friendly relations and a

---

[4]The trial court also held in its summary judgment order that Oregon breached no duty toward Fernandez. Because the trial court had no jurisdiction or properly declined jurisdiction under the principles of comity, it had no authority to make such a determination. *See Deschenes v. King Cy.*, 83 Wn.2d 714, 716, 521 P.2d 1181 (1974).

[5]Oregon argues that it does not fall under this section because it did not breach any duty and therefore committed no tortious act. Fernandez need not prove, however, that the act was, in fact, tortious in order to prove jurisdiction. He must only show that the *allegedly* tortious act occurred in Washington. *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 722, 504 P.2d 782 (1972).

mutual desire to do justice. *See Universal Adj. Corp. v. Midland Bank Ltd.*, 281 Mass. 303, 184 N.E. 152 (1933). Although a state may exercise jurisdiction over other states if its state policy so dictates, the United States Constitution does not require such an exercise. *Nevada v. Hall*, 440 U.S. 410, 59 L. Ed. 2d 416, 428, 99 S. Ct. 1182, *reh'g denied*, 441 U.S. 917, 60 L. Ed. 2d 389, 99 S. Ct. 2018 (1979).

In *Nevada v. Hall*, the Supreme Court stated that although states need not refuse jurisdiction because of comity, states are free to "presume a greater degree of comity, and friendship, and kindness towards one another". *Hall*, at 426. Comity may be applicable in situations where assumption of jurisdiction "would impinge unnecessarily upon the harmonious interstate relations which are part and parcel of the spirit of co–operative federalism." *Simmons v. State*, 206 Mont. 264, 290, 670 P.2d 1372, 1385 (1983).

Here, we believe that the trial court properly applied principles of comity in declining to assume jurisdiction. The bridge was constructed as a cooperative effort between the states. According to the agreement between the states, as modified, Washington assumed responsibility for the design of the bridge on the Washington side. Subjecting Oregon to Washington jurisdiction because an accident occurred on the Washington side of a bridge that benefits both states does not appear to promote cooperative endeavors between the two states. Furthermore, Fernandez would not be without compensation if negligence were proved because other defendants exists from whom he could recover.

Fernandez finally argues that Oregon and Washington are not entitled to governmental immunity from suit. Because we hold that Washington breached no duty and because jurisdiction over Oregon was rightly declined, we need not discuss this contention.

We affirm.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied September 24, 1987.