[No. 54634-7. En Banc. June 16, 1988.]

GRANGE INSURANCE ASSOCIATION, *Respondent,* v. THE STATE OF WASHINGTON, ET AL, *Defendants,* THE STATE OF IDAHO, *Petitioner.*

---

*Gerald M. Ormiston* (*John P. Howard* and *Quane, Smith, Howard & Hull,* of counsel), for petitioner.

*Douglas R. Shepherd* and *Shepherd & Abbott,* for respondent Grange Insurance Ass'n.

DURHAM, J.—Due process precludes Washington courts from extending long–arm jurisdiction over an out–of–state

defendant unless that defendant has purposefully established minimum contacts here. At issue in the present case is if the State of Idaho purposefully established minimum contacts when it certified that particular cows were free of disease or infection, knowing that the cows would be immediately shipped to farmers in this state. Idaho inspected the cows in cooperation with a federal program designed to eradicate the outbreak of brucellosis, and consequently was acting at least in part for the benefit of citizens of this state. Because Idaho did not purposefully avail itself of Washington's markets in the usual commercial sense, we conclude that it did not purposefully establish minimum contacts here and long–arm jurisdiction cannot be maintained.

## FACTS

In 1976 and 1977, Harold and Rose Marie Holloway purchased dairy cattle from an Idaho dealer. They later learned that some of the cattle were infected with brucellosis. Brucellosis is an infectious disease which primarily affects calving in dairy cattle. It is particularly difficult to eradicate or control because the infecting organism has an incubation period that ranges from 2 weeks to more than a year, during which time the animal displays no visible signs of infection.

The Holloways are Lewis County dairy farmers who also operate a cattle dealership and auction business. In 1977, they sold cattle to Whatcom County buyers, whose dairy herds, and those of some of their neighbors, subsequently became infected with brucellosis. These farmers sued the Holloways, alleging that the brucellosis came from the Holloway farm.[1] They recovered a total judgment of $2.9 million. The Grange Insurance Association settled the claims

---

[1]Named as codefendants with the Holloways were the State of Washington and a variety of its officers and employees. Summary judgment was granted to these defendants pursuant to the public duty doctrine. That judgment is currently being reviewed in this court. *Honcoop v. State,* 43 Wn. App. 300, 716 P.2d 963 (1986), *review granted,* 108 Wn.2d 1030 (1987).

of the Whatcom County plaintiffs by paying $1.5 million, in return for which the Holloways assigned to Grange their claims relating to this dispute.

Grange sought contribution for its damages by suing the States of Washington and Idaho, several of their employees, and the Idaho individual who sold the cattle to the Holloways.[2] Grange argued that both states were negligent in failing to prevent the Idaho brucellosis outbreak from spreading to Washington dairy herds.

Idaho moved for dismissal based on a lack of personal jurisdiction. Idaho's contacts with this State are as follows. A veterinarian employed by the State of Idaho conducted a brucellosis test on the cattle being sold to the Holloways. An affidavit from an Idaho state official indicates that "Idaho requires all cattle being sold for dairy production purposes be tested on change of ownership." Idaho's inspection was part of a cooperative effort with the federal government in controlling and eradicating brucellosis. *See* Idaho Code § 25–601 (1987). The veterinarian found no sign of brucellosis and signed certificates stating: "I have inspected the animals described hereon and find them to be free from visible signs of infectious, contagious, or communicable disease." Each certificate also indicated that the destination address for the cattle was that of a Washington buyer. All of Idaho's acts took place within its own state borders.

The trial court concluded that these contacts provided an insufficient basis for Washington courts to impose jurisdiction over the State of Idaho and dismissed Idaho from the case. The Court of Appeals reversed, holding that Idaho was subject to the jurisdiction of Washington courts under

---

[2]Grange also brought a separate contribution action against two of the farmers who had recovered judgment against the Holloways. Grange argued that these two farmers had been negligent in allowing the brucellosis to spread to the farms of three other farmers involved in that case. The trial court granted summary judgment against Grange, but the Court of Appeals reversed, and a motion for reconsideration is currently pending in that court. Grange Insurance Association v. Megard, cause 17765–6–I.

this state's long–arm statute, RCW 4.28.185, and the due process clause of the federal constitution. *Grange Ins. Ass'n v. State,* 49 Wn. App. 551, 744 P.2d 366 (1987).

Idaho filed a petition for review in this court, challenging the constitutional analysis engaged in by the Court of Appeals. The State of Washington joined in seeking review on these grounds and also argued that jurisdiction should be declined as a matter of comity. We granted review.

## ANALYSIS

Analysis of jurisdiction under a long–arm statute involves two separate issues: (1) does the statutory language purport to extend jurisdiction, and (2) would imposing jurisdiction violate constitutional principles. *See Werner v. Werner,* 84 Wn.2d 360, 364, 526 P.2d 370 (1974) (long–arm jurisdiction is intended to operate "to the full extent allowed by due process except where limited by the terms of the statute"). Courts should address the statutory issue before reaching the constitutional issue. *Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir. 1987); *Wolf v. Richmond Cy. Hosp. Auth.,* 745 F.2d 904, 909 (9th Cir. 1984), *cert. denied,* 474 U.S. 826 (1985). In this analysis, the burden of proof rests with the party asserting jurisdiction. *In re Marriage of Hall,* 25 Wn. App. 530, 536, 607 P.2d 898 (1980); *Access Rd. Builders v. Christenson Elec. Contracting Eng'g Co.,* 19 Wn. App. 477, 576 P.2d 71 (1978).[3]

### A
### Interpretation of the Long–Arm Statute

Washington's long–arm statute reads in relevant part as follows:

---

[3]A recent Supreme Court case, however, implies that for one element of the constitutional analysis, some burden of proof might be on the defendant. In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985), the Court's rationale suggests that the burden of proof might lie with the defendant regarding the third due process element, that is, whether imposing jurisdiction would be consistent with "fair play and substantial justice". *See* 4 C. Wright & A. Miller, *Federal Practice* § 1067, at 301–02 (2d ed. 1987). Nevertheless, because this case does not turn on analysis of the third element, we need not discuss that element's burden of proof.

(1) Any person, whether or not a citizen or resident of this state, who . . . does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . .

(b) The commission of a tortious act within this state;

. . .

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

. . .

RCW 4.28.185.

There is no dispute that the current cause of action arose from Idaho's contacts here. The only question is if Idaho committed a "tortious act" within Washington, when all of its actions occurred outside this state.[4] This court has held many times that when an injury occurs in Washington, it is an inseparable part of the "tortious act" and that act is deemed to have occurred in this state for purposes of the long–arm statute. *See, e.g., Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 722, 504 P.2d 782 (1972); *Bowen v. Bateman,* 76 Wn.2d 567, 575, 458 P.2d 269 (1969).

The Court of Appeals concluded that the injury in this case occurred in Washington, thereby satisfying the statutory requirement that a tortious act occur in this state. Idaho has not challenged this conclusion in its petition for review, arguing instead that the Court of Appeals erred in its constitutional analysis. Accordingly, this issue is outside the scope of our review. RAP 13.7(b).

## B
## Due Process Considerations

Idaho contends that extension of jurisdiction in this case would violate its due process rights under the Fifth Amendment to the federal constitution.

---

[4]Whether Idaho's acts were actually tortious is not currently before this court. That issue relates to the merits of the case, not to a motion to dismiss for lack of jurisdiction. *Grange Ins. Ass'n v. State,* 49 Wn. App. 551, 556, 744 P.2d 366 (1987).

The United States Supreme Court has established that due process requires that the following three elements be met before jurisdiction can be constitutionally extended: (1) that purposeful "minimum contacts" exist between the defendant and the forum state; (2) that the plaintiff's injuries "arise out of or relate to" those minimum contacts; and (3) that the exercise of jurisdiction be reasonable, that is, that jurisdiction be consistent with notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–78, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). This same analysis was followed in the plurality and concurring opinions that constitute *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).

The same general standards have been adopted in Washington case law, although they are phrased in a slightly different manner. This court has set out the following test:

> [T]here are three basic factors which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115–16, 381 P.2d 245 (1963). Because these two tests are so similarly phrased, this opinion refers to them jointly as the due process test.

Despite the language of these tests, the Court of Appeals concluded that the first element could be satisfied without any analysis of the purposefulness of Idaho's actions. The court stated that this first due process element was based

only on the long–arm statute, requiring no more than the commission of a tortious act within this state. *Grange,* at 555–56. Accordingly, the court relegated its analysis of "purposefulness" to the third prong of due process. *Grange,* at 557–59. This difference is important. If "purposefulness" is analyzed under the first requirement, then a lack of "purposefulness" would preclude jurisdiction. If, however, it is analyzed under the third requirement, "purposefulness" would be merely one of a number of factors to be balanced in determining if jurisdiction is reasonable and fair and, therefore, an absence of that factor would not necessarily be fatal to jurisdiction.

The Court of Appeals was not without support in its conclusion that evaluation of the first due process element need not include analysis of "purposefulness". *See Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 722, 504 P.2d 782 (1972); *Bowen v. Bateman, supra* at 575; *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 471, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025 (1966); *see also Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963). However, other cases from this court suggest that this statutory analysis is only the starting point for proper determination of the first element, in that purposefulness must still be addressed. *See Oliver v. American Motors Corp.,* 70 Wn.2d 875, 884–89, 425 P.2d 647 (1967); *In re Miller,* 86 Wn.2d 712, 719, 548 P.2d 542 (1976).

█ The cases relied upon by the Court of Appeals were decided at a time when the United States Supreme Court had not clearly established that the purposeful nature of minimum contacts is a separate requirement from the balancing test of the third element. *See* 4 C. Wright & A. Miller, *Federal Practice* § 1067, at 299–300 (2d ed. 1987). However, two recent opinions from the Supreme Court indicate unambiguously that the requirements are indeed separate. *Burger King,* 471 U.S. at 476 ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether

the assertion of personal jurisdiction [would be justified under the third element]"); *Asahi Metal Indus. Co. v. Superior Court, supra.* Accordingly, there is no longer any doubt that a party asserting long–arm jurisdiction must show "purposefulness" as part of the first due process element. Absent this showing, jurisdiction cannot be imposed. *See Stuart v. Spademan,* 772 F.2d 1185, 1191–92 (5th Cir. 1985) ("the fairness factors [of the third due process element] cannot of themselves invest the court with jurisdiction over a nonresident when the minimum–contacts analysis weighs against the exercise of jurisdiction").

In applying this standard, we must determine if Idaho purposefully directed its activities toward this state. Grange argues that Idaho knew that its acts would directly affect Washington residents and, therefore, it acted purposefully here. Idaho argues that its acts were not directed purposefully at Washington residents because its acts were merely part of a general policy of testing all cattle being transferred within the state, whether they are destined to leave the state or not.

In *Burger King,* the United States Supreme Court explored in detail the first due process element. Minimum contacts are established if the defendant has "'purposefully directed' his activities at residents of the forum" state. *Burger King,* at 472 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984)). Where defendants "'purposefully derive benefit'" from their interstate activities, it would be unfair to allow them to escape the consequences that proximately arise from these activities in other jurisdictions. *Burger King,* at 473–74 (quoting *Kulko v. Superior Court,* 436 U.S. 84, 96, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978)). In slightly different terms, the Court also stated that jurisdiction should only be imposed if a defendant "purposefully avails itself" of the privilege of acting within the forum state, thereby invoking the benefits and protections of its laws. *Burger King,* at 475 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d

1283, 78 S. Ct. 1228 (1958)).

It is undisputed that Idaho knew that the cows being tested in this particular case were destined for immediate sale to a Washington buyer. This fact triggers an issue that the United States Supreme Court has been unable to resolve. In *Asahi Metal Indus. Co. v. Superior Court, supra,* the Court was called on to decide if the first due process element—"purposefulness"—is satisfied by showing that the defendant was aware that the stream of commerce would "sweep" its product into the forum state. Four Justices concluded that this showing by itself does not satisfy the first due process element. These Justices would require an additional showing that other acts were directed to the forum state, such as advertising there. *Asahi,* 107 S. Ct. at 1033 (opinion of O'Connor, J., with Rehnquist, C.J., Powell and Scalia, JJ., concurring). Four other Justices held that mere awareness was enough to establish a "purposeful act" directed to the forum state's residents. *Asahi,* 107 S. Ct. at 1035 (opinion of Brennan, J., with White, Marshall, and Blackmun, JJ., concurring). The ninth member of the Court, Justice Stevens, concluded that this issue did not need to be reached. *Asahi,* 107 S. Ct. at 1038 (White and Blackmun, JJ., concurring).

There seems to be no similar split of authority within this state's courts, at least as far as nonresident manufacturers and retailers are concerned. This court has decided that purposeful minimum contacts are established when an out–of–state manufacturer places its products in the stream of interstate commerce, because under those circumstances it is fair to charge the manufacturer with knowledge that its conduct might have consequences in another state. *Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 723, 504 P.2d 782 (1972) (and cases cited therein). Additionally, out–of–state retailers can be subject to jurisdiction here if they can be charged with knowledge that their transactions might have consequences here, although a retailer's mere placing of a product into interstate commerce is not by itself a sufficient

basis to infer the existence of purposeful minimum contacts. *Oliver v. American Motors Corp.,* 70 Wn.2d at 889; *Smith v. York Food Mach. Co., supra* at 724.

Were these principles to be applied in the present case, Idaho would be deemed to have established purposeful minimum contacts in this state on the basis that its own employees knew that these particular cows would be immediately shipped into Washington upon a determination that the cows were free of disease.

■ However, examination of the policies behind the first due process element reveals that these principles should not be used to extend jurisdiction over Idaho in the present case. While the rule makes sense with respect to manufacturers and retailers, it does not make sense when applied to a state governmental agency performing a service that benefited the forum state. As was outlined above in the discussion of *Burger King,* extending jurisdiction is justified only if the defendant has purposefully availed itself of the forum state's markets, thereby deriving benefits and protections of the forum state's laws, so that it would be unfair to allow the defendant to escape the consequences for its actions in that state.

In the usual case, a commercial, nongovernmental defendant has used the forum state's market for its own profit–seeking purposes. In the present case, however, the State of Idaho has derived no such benefits. There is nothing in the record to indicate that Idaho directly profited when its cows were sold in Washington. Arguably, it received indirect benefits, in that Idaho residents directly profited from the sale of cows to Washington residents. But these indirect benefits are not sufficient to support a finding that minimum contacts have been established, especially when Idaho's acts were in cooperation with a federal program designed to protect all purchasers of cattle from brucellosis. Idaho simply has not "availed itself" of Washington's markets in a manner that justifies imposition of long–arm jurisdiction.

The Montana Supreme Court has held under similar facts that minimum contacts were not established. *Simmons v. State,* 206 Mont. 264, 670 P.2d 1372 (1983). There, the State of Montana had a statutory duty to conduct certain blood tests on children born in the state or to contract with an approved laboratory to do so. The State of Montana contracted with the State of Oregon to perform these tests. A Montana resident sued the State of Oregon when that state's lab failed to detect a certain metabolic disorder in his son. The Montana court concluded that Oregon had not purposely availed itself of the privilege of conducting activities in Montana. *Simmons,* at 280–84. In support, the court cited to a line of cases, beginning with *Wright v. Yackley,* 459 F.2d 287 (9th Cir. 1972), that distinguish between "voluntary interstate economic activity, directed at the forum state's economic markets, [and] the provision of medical services outside of the forum state where the provider has not solicited clientele", such that in the latter situation jurisdiction cannot be maintained. *Simmons,* at 282. This distinction is based on the theory that the rendition of services is more personal in nature than is the sale of goods, such that the location where the services are performed is of greater jurisdictional importance than is the location where a product is bought. *See Simmons,* at 281; *Wright v. Yackley, supra* at 289. It is also founded on a public policy of ensuring that medical services are fully available to all people, a policy that might be inhibited if doctors were worried about having to defend malpractice suits in distant states. *Simmons,* at 281–82; *Wright v. Yackley, supra* at 290. Accordingly, the Montana court concluded that Oregon's activity was

> for the ultimate benefit of the child, while Oregon was compensated only for its marginal costs of operation. Oregon is certainly aware that the negative as well as positive consequences of its service will be felt in Montana, but . . . it reasonably expects liability for the negative consequences only in its own state. In short, we think the facts of this case are more akin to the services discussed in *Wright v. Yackley,* supra, wherein the Ninth

Circuit concluded that, because of the locus of perform-ance and nature of the contract, the physician had not "purposely avail[ed] itself of the privilege of conducting activities within the forum State."

*Simmons,* at 283.

The Court of Appeals in this state has also approved of the *Wright v. Yackley* distinction. In *Hogan v. Johnson,* 39 Wn. App. 96, 692 P.2d 198 (1984), a patient treated by a doctor in California moved to Washington before she dis-covered that she had been injured by the doctor's treat-ment. The court, relying on the distinction for unsolicited medical services, held that the doctor had not purposely availed himself of the privilege of conducting activities in this state. *Hogan,* at 102–03.

We agree with the reasoning of these cases in adopting the distinction for unsolicited medical services. Moreover, we concur in the manner in which the *Simmons* court applied that distinction to a governmental defendant. Here, comparable to the analysis of *Simmons,* the ultimate bene-ficiary of Idaho's acts was not Idaho itself, but the Wash-ington buyers. All of Idaho's acts were conducted within its own state borders and it did not solicit business from the Washington buyers. Accordingly, we conclude that the ser-vices rendered by Idaho do not support a conclusion that it purposely availed itself of the benefits of the Washington markets. Therefore, the first prong of the due process test has not been met.

Grange places great emphasis on its argument that it has no alternative forum, other than the Washington courts, in which it is able to pursue its remedy against Idaho. Grange argues that it cannot sue Idaho in the federal courts because of the Eleventh Amendment to the federal consti-tution,[5] and that it probably cannot sue in the Idaho courts because of Grange's failure to timely present a claim to the

---

[5]The Eleventh Amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or pros-ecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. 11.

Idaho Secretary of State. *See* Idaho Code §§ 6–905, 6–908 (1987). Nevertheless, the availability of an alternative forum, although important to analysis of the "fair play and substantial justice" under the third due process element, is irrelevant to analysis of the first element. If the first element's requirement of purposeful minimum contacts is not met, then jurisdiction cannot be maintained here, regardless of the plaintiff's interest in obtaining relief.

Because we have held that the first due process element precludes the extension of jurisdiction over Idaho in this case, we need not analyze if the third due process element was satisfied. *See Stuart v. Spademan,* 772 F.2d 1185, 1194 n.7 (5th Cir. 1985); *Richardson v. American Family Ins. Co.,* 643 F. Supp. 364, 367 (D. Mont. 1986). Likewise, we need not address the arguments raised by the State of Washington in this court to the effect that we should decline jurisdiction as a matter of comity.

## C
### Waiver

Finally, Grange argues that even if jurisdiction might not be proper, Idaho waived its right to object to jurisdiction when it asked the trial court to award attorney fees as part of its motion to dismiss for lack of jurisdiction. The Court of Appeals below did not need to reach this issue because it determined that jurisdiction was properly exercised.

The Court of Appeals has several times held that "even where the defendant has objected to personal jurisdiction under CR 12(b), he may waive the defense of lack of jurisdiction by seeking affirmative relief, thereby invoking the jurisdiction of the court." *In re Marriage of Parks,* 48 Wn. App. 166, 170, 737 P.2d 1316, *review denied,* 109 Wn.2d 1006 (1987); *see also Livingston v. Livingston,* 43 Wn. App. 669, 671, 719 P.2d 166, *review denied,* 107 Wn.2d 1005 (1986); *Kuhlman Equip. Co. v. Tammermatic, Inc.,* 29 Wn. App. 419, 424–25, 628 P.2d 851 (1981). However, affirmative relief is defined to be "[r]elief for which defendant might maintain an action independently of plaintiff's claim

and on which he might proceed to recovery, although plaintiff abandoned his cause of action or failed to establish it." Black's Law Dictionary 56 (5th ed. 1979). A motion for attorney fees incurred in defending the plaintiff's suit, of course, is dependent on the plaintiff's claim; the defendant would have no right to attorney fees if the plaintiff had not brought his claim. Because Idaho was not seeking affirmative relief, its actions did not constitute a waiver of its arguments on the jurisdiction issue.

### CONCLUSION

We reverse the Court of Appeals and reinstate the trial court's order dismissing the State of Idaho for a lack of personal jurisdiction.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW and GOODLOE, JJ., and CLARKE, J. Pro Tem., concur.

Reconsideration denied September 7, 1988.