[No. 24401-9-I.   Division One.   December 31, 1990.]

ANDREW CARRIGAN, ET AL, *Respondents,* v. THE
CALIFORNIA HORSE RACING BOARD,
*Petitioner.*

*Christopher E. Mathews (Ramon de la Guardia, Deputy Attorney General,* of counsel), for petitioner.

*Richard Beal* and *John Ohnstad, Jr.,* for respondents.

WINSOR, J.—The California Horse Racing Board (CHRB) appeals an order denying its motion to dismiss for lack of personal jurisdiction. It contends the trial court erred in finding jurisdiction under RCW 4.28.185(1)(a) and (b), and in failing to rule that the exercise of jurisdiction in this case violates due process. We reverse the trial court and dismiss the action against CHRB.

In early 1989, Andrew Carrigan and John Love (hereinafter Respondents) purchased horses in California claiming races. CHRB then had in effect a rule providing that a horse acquired in a claiming race shall not "be eligible to race in any State other than California until the close of the meeting where it was claimed except to race in a stake race."[1] CHRB rule 1663. Had this rule been enforced against Respondents, they would have been unable to race their newly acquired horses in Washington until after June 25, 1989.

To ensure their horses' eligibility to race in Washington before June 25, 1989, Respondents filed an action against several defendants, including CHRB and the Washington Horse Racing Commission (WHRC). The complaint alleged that CHRB rule 1663 violated 42 U.S.C. § 1983 and several

[1]A claiming race is one in which each horse is entered on the condition that it may be purchased for a previously stated price. A meeting is a racing session extending for a stated term of days at one track.

constitutional provisions, including the commerce clause. Respondents sought damages, class certification, and

preliminary and permanent injunctive relief prohibiting defendants from:

A. Rejecting (or permitting the rejection) of entries of horses at Longacres between April 5, 1989 and June 25, 1989 who were claimed at Golden Gate Racecourse during the current meet there;

B. Maintaining (or permitting the maintenance) of a "house rule" preventing owners or trainers who claim horses at Long-acres from immediately entering such horses in races outside the state of Washington;

C. Taking retaliatory action (or permitting retaliatory action) against plaintiffs, their trainers, and/or class members for maintaining this lawsuit[;]

D. Enforcing CHRB Rule 1663 and/or WAC 260-60-180 [a provision prohibiting horses claimed in Washington from racing outside the state until the close of the meeting at which the horse was claimed].

CHRB moved to dismiss Respondents' claim for lack of personal jurisdiction. The trial court denied CHRB's motion. This court granted discretionary review.

Respondents assert specific jurisdiction under RCW 4.28.185. Under this statute, jurisdiction is obtained when the cause of action arises from the defendant's contact with the forum. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115–16, 381 P.2d 245 (1963); *Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 411, 767 P.2d 584 (1989), *overruled on other grounds in Shute v. Carnival Cruise Lines,* 113 Wn.2d 763, 783 P.2d 78 (1989). To decide whether a Washington court can exercise specific jurisdiction over an out–of–state defendant, the court must first determine whether the defendant is within RCW 4.28.185's reach; it then decides whether imposition of jurisdiction violates due process. *E.g., Grange Ins. Ass'n v. State,* 110 Wn.2d 752, 756, 757 P.2d 933 (1988), *cert. denied,* 490 U.S. 1004 (1989). Because we find no statutory basis for exercising jurisdiction over CHRB, we do not reach the due process question.

Respondents first contend that jurisdiction was properly exercised under RCW 4.28.185(1)(a). Under this provision,

a trial court can exercise jurisdiction over a nonresident defendant for any cause of action arising from that defendant's "transaction of any business within this state".[2]

■ To transact business within this state for purposes of RCW 4.28.185(1)(a):

(1) The nonresident defendant . . . must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee Constr. Co.*, 62 Wn.2d at 115–16; *accord, Shute*, 113 Wn.2d at 767; *Grange*, 110 Wn.2d at 758.

■ Our Supreme Court recently clarified what acts fulfill the purposeful act requirement. Relying on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985), the court explained that this requirement is met when the defendant "purposefully availed itself of the forum state's markets, thereby deriving benefits and protections of the forum state's laws, so that it would be unfair to allow the defendant to escape the consequences for its actions in that state." *Grange*, 110 Wn.2d at 762.

Even when interpreted most favorably to Respondents,[3] the record before us reveals only one purposeful act committed by CHRB: enactment, in California, of a rule that purports to affect the eligibility of certain horses to race in states other than California. Respondents offer no evidence

---

[2]The analysis made under this statutory provision is essentially the same as that made in deciding whether due process permits the assertion of jurisdiction. *See generally Shute*, 113 Wn.2d at 768 ("when the federal courts regard the due process standard and the statutory standard under RCW 4.28.185[(1)(a)] as a single inquiry, it is based upon a concept firmly rooted in our case law"). (Footnote omitted.)

[3]When, as here, in a motion to dismiss for lack of jurisdiction the trial court considers matters outside the pleadings, the motion is treated as one for summary

from which it can be inferred that CHRB has attempted to enforce this rule in Washington. Consequently, there is simply no evidentiary basis for finding that CHRB has derived any benefit or protection from Washington's laws. Absent such evidence, jurisdiction over CHRB under RCW 4.28.185(1)(a) cannot be maintained. *Cf. Grange,* 110 Wn.2d at 765.[4]

Respondents also claim jurisdiction under RCW 4.28.185(1)(b). This provision grants jurisdiction over any cause of action arising from the defendant's "commission of a tortious act within this state". To establish jurisdiction under this subsection, a plaintiff need not *prove* that a tortious act was committed; that issue is for the trier of fact. *Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 722, 504 P.2d 782 (1972); *Fernandez v. Department of Hwys.,* 49 Wn. App. 28, 37 n.5, 741 P.2d 1010 (1987). The plaintiff must, however, have at least *alleged* the commission of such an act. *See, e.g., Smith,* 81 Wn.2d at 722 (plaintiff alleged negligent product design and manufacture); *Fernandez,* 49 Wn. App. at 29 (plaintiff alleged negligent bridge design). Whether an alleged act is a tort for purposes of the long-arm statute is addressed contemporaneously with the merits of the jurisdiction question. *See In re Miller,* 86 Wn.2d 712, 717–19, 548 P.2d 542 (1976) (determining that non-support of a child is a tort, before addressing merits of jurisdiction issue); *Werner v. Werner,* 84 Wn.2d 360, 369–70, 526 P.2d 370 (1974) (holding that California notaries' failure to ascertain identity of signatories was actionable negligence under California law, contemporaneously with addressing jurisdiction issue).

Again, it is significant that CHRB has undertaken just one act: the enactment of rule 1663. Respondents allege

---

judgment and the facts are viewed in the light most favorable to the party opposing dismissal. *Access Rd. Builders v. Christenson Elec. Contracting Eng'g Co.,* 19 Wn. App. 477, 481, 576 P.2d 71 (1978).

[4]If it were necessary to reach the other two requirements of RCW 4.28-.185(1)(a) we would find them lacking as well.

that this act is tortious because rule 1663 violates a constitutional provision. Both on appeal and below, their argument in support of this allegation consists solely of a citation to the Restatement (Second) of Torts § 874A comment *a* (1977), which states that a court *may* accord a cause of action based upon violation of a statute, regulation, or constitutional provision. Significantly, however, the Restatement does not state that any violation of a constitutional provision necessarily is a tort, nor does it purport to encompass the enactment or enforcement of a regulation.

Absent more persuasive argument or authority, we have no basis for concluding that CHRB's enactment of an allegedly unconstitutional regulation is a tortious act within the purview of RCW 4.28.185(1)(b). *See Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (absent adequate, cogent argument and briefing, appellate court should not consider an issue). We therefore hold that the trial court's exercise of jurisdiction under this section was error.

■ Even if jurisdiction were properly exercised under RCW 4.28.185(a) or (b), principles of comity would still persuade us to reverse the trial court. Comity allows a state to decline jurisdiction over another state. *E.g., Fernandez,* 49 Wn. App. at 37–38. Such comity is properly exercised when the assumption of jurisdiction would not promote cooperative efforts between states. *Fernandez,* 49 Wn. App. at 38. It is also properly exercised to allow a state court the first opportunity to pass on the constitutional validity of its own rules and regulations. *See generally Watson v. Buck,* 313 U.S. 387, 85 L. Ed. 1416, 61 S. Ct. 962, 136 A.L.R. 1426 (1941). This latter consideration is clearly present here.

■ Finally, we address CHRB's request for reasonable attorney fees as authorized by RCW 4.28.185(5). CHRB failed to comply with RAP 18.1(b), which requires a party to devote a section of the brief to a fee request. This has caused considerable inconvenience to the court and to Respondents. Nevertheless, under the version of RAP 18.1(b) in effect at the time CHRB prepared its brief, we

may impose sanctions other than a complete denial of attorney fees.[5] *See Glesener v. Balholm,* 50 Wn. App. 1, 9, 747 P.2d 475 (1987); *Simonson v. Fendell,* 34 Wn. App. 324, 328–32, 662 P.2d 54 (1983), *rev'd on other grounds,* 101 Wn.2d 88, 675 P.2d 1218 (1984). Accordingly, we grant CHRB's request for fees. Pursuant to RAP 18.1(f), the commissioner shall determine the amount of fees in accord with the guidelines discussed in *Scott Fetzer Co. v. Weeks,* 114 Wn.2d 109, 786 P.2d 265 (1990). However, as a sanction for noncompliance with RAP 18.1(b), counsel for CHRB shall pay $300 to the clerk of this court, and shall also pay to Respondents an amount sufficient to compensate for fees incurred in connection with their motion to strike CHRB's fee affidavit.[6]

The trial court's order is reversed and CHRB is dismissed from this cause of action.

PEKELIS, J., and DEIERLEIN, J. Pro Tem., concur.

Reconsideration denied April 3, 1991.

Review denied at 117 Wn.2d 1002 (1991).

---

[5]Former RAP 18.1(b) provided that a party "should devote a section of the brief to the request for the fee or expenses." As used in the Rules of Appellate Procedure, "should" used in this context means a party is under an obligation to perform. RAP 1.2(b). Presumably because of confusion over this meaning of "should", RAP 18.1(b) was amended effective September 1, 1990, to provide that a party "*must* devote a section of the brief to the request for the fees or expenses." (Italics ours.) 115 Wn.2d 1101, 1139 (1990); *see* 113 Wn.2d xlix–li (1990) (explaining that purpose of many proposed amendments to RAP 18.1 is to eliminate traps for the unwary). The command "must" is used in the rules to emphasize that noncompliance will result "in more severe than usual sanctions." RAP 1.2(b).

[6]This amount will be determined by the commissioner upon CHRB's submission of a fee affidavit.